Sedgwick, J.
(After stating the facts, as agreed by the parties.) The policy of insurance, upon which this action is brought, is in the usual form as to the perils insured against; and the loss ali ged to have happened during the voyage insured, is claimed against the defendants, as having been occasioned by the restraint *166 and detention of a prince, called the Dato Bassow of the Island of Sumatra.
It is an insurance of 5000 dollars in specie or merchandise out and merchandise home, on board the brig Success, at and from Boston, to port or ports in the Island of Sumatra, or Java, for the purpose of disposing of the outward and procuring a return cargo, and at and from thence to her port of discharge in the United States.
It is agreed that the plaintiff was interested in the cargo shipped at Boston, for the voyage, to a greater amount than the [ * 203 ] sum insured, and that, during the voyage, he has * sustained a loss; and the general question is, whether for that loss the defendants are responsible.
The insurance is on the voyage round, both outward and homeward, for an entire premium, and it is therefore to be considered as one voyage. (4)
There are two subjects for which the plaintiff claims to recover — 1. The money sent on shore from the brig, by the order of the master; and, 2. the opium, which was forcibly taken from the brig’s boat.
As to the money, we think the plaintiff cannot recover. The whole money carried on shore and delivered to the Dato Bassow, Was 1997 dollars 50 cents, of which 212 dollars 50 cents had been previously received of him for some muskets ; and the money was voluntarily delivered to him, on his promise to redeliver the muskets, which promise he broke. Had he performed his promise, no loss would have been sustained. Of consequence the real loss was sustained by his breach of promise, for which, however liberally we may be disposed to consider this contract, we cannot think the underwriters responsible. And, besides, these muskets were not the property of the plaintiff; and therefore the money received for them could not belong to him. As to the residue of the money, 1785 dollars, it was in fact paid as the price of pepper, which constituted part of the return cargo. The pepper was, it is true, received by the master in pursuance of an agreement, by which it was to be paid for in opium. The pepper was accordingly carried on board the brig, and the opium brought on shore ; but before the delivery was completed, the former agreement was rescinded, and a new one substituted, by which the master was to pay in money for the pepper, and the opium was to be returned on board. The master faithfully performed his part of the agreement, but the Dato Bassow most perfidiously violated his part. This violation of promise was the cause of the loss in this respect. It is therefore a *167 loss, as has been observed with regard to the other sum of money, for which the underwriters cannot be responsible.
* The next question is, whether the plaintiff is entitled [ * 204 ] to recover for the opium. — The insurance is of the cargo on board for the voyage to the Islands of Sumatra and Java, for the purpose of disposing of the outward-, and procuring a return cargo.
That the opium was in fact lost by a peril insured against, the restraint and detention of a sovereign prince, or by assailing thieves, is undoubtedly true; and the only question is, whether the loss occasioned thereby happened under circumstances to entitle the plaintiff to demand a compensation for it from the underwriters.
It must be acknowledged that the policy did not attach, unless the property of the plaintiff, secured by it, was in such circumstances as to constitute part of the cargo of the brig; and that the insurers were discharged from all responsibility, whenever that property was landed in good safety, whether at the termination of the voyage, or at any intermediate port. Was the opium so landed at Labouaga, when it was violently seized and detained by the Dato Bassow ?
Every underwriter is presumed to be acquainted with the practice of the trade he insures; and it must be supposed to be the intention of the contract to conform the indemnity to the known practice. In the casé of Noble vs. Kennoway, (5) this principle was recognized and applied. This was an insurance on the ships Hope and Anne, from Waterford to a port or ports of discharge on the coast of Labrador, and upon any kind of goods or merchandise; on the ships until they should have arrived at their port of discharge, and been moored at anchor twenty-four hours; and on the goods until the same should be discharged and safely landed. Both the ships arrived on the coast of Labrador; the last on the 14th of July, 1778. The goods were not landed, but kept on board until the 13th of August following, when they, with the ships, were captured by an enemy privateer. Now, it is the known duty of the insured, in ordinary cases, to remove goods insured from on board, * within a convenient and reasonable time [ * 295 ] after arrival at the port of destination ; and if he neglects to perform it, the underwriters are discharged. But as it turned out in evidence, in the case referred to, that the practice was different in this trade, and that goods were generally kept on board, it was therefore determined that the plaintiff was entitled to ecover.
And in the case of Tierney vs. Etherington, reported at large by *168 Lord Mansfield, in delivering the opinion of the court in the case of Pelly vs. The Governor and Company of the Royal Exchange Assurance, (6) the same principle is laid down. That was an insurance on goods in a Dutch ship from Malaga to Gibraltar, and at and from thence to England or Holland. This insurance was attended with an agreement, that upon the arrival of the ship at Gibraltar, the goods might be unladen, and reshipped in one or more British ship or ships for England and Holland.
Here it will be observed that the goods were insured in no other ships than the Dutch ship, in which they first were, and the British ship or ships, on board which they might be reshipped. But when the Dutch ship arrived at Gibraltar, the goods were unloaded, and put into a store-ship, which was considered as a warehouse, where, two days afterwards, they were lost in a storm. Now, although, by the terms of it, the policy did not protect the goods while in the store-ship, yet the plaintiff recovered, because the assured, by putting them there, had pursued the known course of the trade, and therefore such a construction must be given as would indemnify the assured for the loss which had happened. In this case, it was said by Lee, C. J., “ This manner of unloading and reshipping is to be considered as the necessary means of obtaining that which was intended by the policy, and seems to be the same as if it had happened in the act of reshipping from one ship to another; and as this is the known course of the trade, it seems extraordinary if it was not intended.” And in the case of Pelly vs. The Governor and Com- [ * 206 ] pany of the Royal Exchange * Assurance, Lord Mansfield says, “ The insurer, in estimating the price, at which he is willing to indemnify against all risks, must have under his consideration the nature of the voyage to be performed, and the usual course and manner of doing it. Every thing done in the usual course must have been foreseen, and in contemplation, at the time he engaged. He took the risk upon a supposition that what was usual or necessary would be done.” “ If it is usual to stay so long at a port, or to go out of the way, the insurer is considered as understanding that usage.” “ The means must be taken to be insured, as well as the end.” And Lord Mansfield, farther on in the same case, says that “ describing the voyage is an express reference to the usual manner of making it, as much as if every circumstance was mentioned.”
It remains to be considered, whether, in the application of these principles to the case at bar, it follows that the defendants are liable for the loss which has happened.
*169 The insurers knew the nature of the voyage, and the risks to which it was exposed; and knowing this, they insured the plaintiff against the restraint and detention of princes, for the purpose of disposing of the outward, and procuring a return cargo ; and while executing this purpose, (in the doing of which, it is expressly agreed that the captain conducted his sales and purchases, and his mercantile transactions, in all respects, according to the usage of the place,) the property in question was, by the orders of a sovereign prince, violently seized, while resting on the gunwale of the brig's boat, at that time in the possession of the crew ; and it has thereby been lost to the assured.
The master, without being chargeable with any want of prudence or discretion, was induced, by the art, fraud, and falsehood, of the Dato Bassoiv, to carry the opium on shore, and put it in his power, whose after-conduct shows that his original intention was not to pay for it, but to detain it by force. Can this property, in the meaning of the policy, * be considered as safely [ * 207 ] landed, in such manner as to put it out of the protection of the stipulated indemnity ?
This case is certainly very little like that of Martin vs. The Salem M. Insurance Company, which was cited in the argument. In that case, so far as respects the question now before us, upon a policy similar to this, for the purpose of selling the outward, and purchasing a return cargo, it was very properly determined, that the underwriters were not liable for the proceeds of the sales of the outward cargo, which, by the plunder and burning of Cape.Franpois, were destroyed, in the possession of a factor, with whom they had been several months deposited. In the case before us, when the policy, as made in relation to that particular trade, — the conduct of the captain, in conforming to the known practice of it, —the base conduct of the Dato Bassow, by which the captain was induced to land the opium, — and the violence with which it was afterwards detained, — are taken "into consideration, it may well be said that it was never safely landed, and consequently that when it was lost, the loss was occasioned by a risk insured against. But upon this part of the case no opinion is given, because —
In a further attention to the facts agreed in this case, other considerations, favorable to the plaintiff, and which are believed to be decisive, present themselves. In deciding this cause, as has been before observed, the particular circumstances of the trade to be pursued in the voyage insured, are to be taken into consideration. Now, while the master, in the management of the concerns of his owners, is conducting his sales and purchases, and his mercantile transactions, in all respects, according to the usage of the place, it *170 becomes proper (so conducting) to send on shore part of the cargo; and afterwards such transactions occur, as render it equally proper that it should be reshipped; and being in a boat o.f the ship for that purpose, the property is violently seized, taken away, and detained, either by the orders of a sovereign prince, or by assailing [ * 308 ] thieves, — there can be * no doubt that such is a violent seizure and detention, and renders the underwriters liable as much as they would be, if the property had been taken, in the same manner, from on board the ship itself. For although, in the commencement of the voyage, the insurance did not attach upon the goods, while in the act of .transportation in boats to the brig, nor until they were on board, and this from the terms of the policy, yet during the voyage, the goods were as much protected by the policy in the boats while they were employed, as auxiliary to the legitimate purposes of the voyage, as they were on board the ship. For all the purposes of the voyage, boats so employed are very reasonably considered as part of the ship. (7) It is our opinion that the plaintiff is entitled to judgment. (8)

Defendants defaulted..

Note. The chief justice did not sit in this cause.

 Marshall, 161

 Doug. 492

 1 Burr 348.

 Marshall 159. — Stra. 1236, Sparrow vs. Carnthers. — 1 Burr. 348, Pelly vs. Royal Exchange Assurance, and Tierney vs. Etherington, there cited.

 [ Wadsworth vs. The Pacific Ins. Co., 4 Wend. 33.— Coggeshall vs. American Ins. Co., 3 Wend. 383. —Ed.]