## JESSE HALL *versus* The OCEAN INSURANCE COMPANY.

In order to constitute a constructive total loss of a vessel insured under a valued policy, there must be a loss exceeding half the amount of the valuation without deducting the premium.

In making the estimate of the loss in such case, in order to determine whether it exceeds half the amount insured, items which should properly be carried to the account of general average, are not to be included.

So, expenses incurred in order to ascertain the extent of the loss, are not to be included.

So, the wages and provisions of the officers and crew, while the ship is undergoing repairs, are not to be included in such estimates, as part of the particular average But a reasonable allowance should be made for the custody of the vessel, if necessary, during such repairs, and for superintendence, which allowance should be charged to the account of labor ; and from this charge the deduction of one third new for old, is to be made.

The insurers of a ship are liable for the loss of a boat from the stern davits, at sea, unless it is proved that the boat was improperly carried or slung in that situation ; it being *primâ facie* covered by the policy.

ASSUMPSIT on a policy of insurance, dated December 4th, 1835, whereby the defendants insured the sum of $ 2000 on the brig Alvara, valued at $ 4000, including premium, for the term of one year from the 29th of November, 1835. The premium was at the rate of seven per cent.

At the trial, before *Shaw* C. J., it appeared, that the vessel sailed on a voyage from Frankfort, in Maine, to Porto Rico, during the year for which she was insured ; that she was a low-decked vessel ; that in the course of such voyage, her stern boat was carried away from the stern davits, during a gale, and she sustained sea damage to such an extent, that she was compelled to proceed to Bermuda, for the purpose of being repaired ; that two surveys were held upon her, at Bermuda, and estimates made of the expenses of repairing her ; that she was thereupon sold by the master ; and that she was subsequently

repaired by the purchaser at a sum greatly within the estimates, so as to be sufficiently seaworthy to go to Turks Island, and carry a cargo of salt to New York.

The cargo was sold by the master on the 12th of January, 1836. The vessel was abandoned to the underwriters on the 26th of January, 1836; but they refused to accept the abandonment.

According to the plaintiff's estimate founded on the surveys, the amount fell short of one half of the amount insured ; and he claimed a right to add twenty-five per cent to the items of expenses. With that addition there would be a technical total loss.

St. Vincent Gibbins, who was called as a witness by the plaintiff, testified, that he had had experience in low-decked vessels in the West India and European trade ; that seven eighths of such vessels carried a boat at the stern ; that such vessels do not have quarter davits ; and that it was more convenient to carry a boat at the stern, because it could be got out expeditiously, in case a man should fall overboard.

Isaac B. Trott, another witness called by the plaintiff, testified, that he had been engaged in navigation twenty years ; that it was the custom for low-decked vessels to carry a boat at the stern ; that a boat was as safe at the stern of a low-decked vessel as on the deck.

Both of these witnesses however stated, that they never lost a boat, and did not know what was the practice of insurers.

James Hall, who was called as a witness by the defendants, testified, that he had been president of the New England Insurance Company for twenty years ; that in his belief the general custom among insurers was, with some exceptions, not to pay for boats lost while hanging at the stern ; but that insurers do not give notice, that they do not insure the stern-boat ; that it was understood, that a boat lost from the stern davits, is not to be paid for ; that he considered, that where a boat is carried at the davits, it is done for the convenience of the master and owner, in order to make room ; and that he could not say, that such a claim for a boat to a low-decked vessel had been disallowed, but that he thought no distinction was made

Charles W. Cartwright, another witness called by the de

fendants, testified, that he had been president of an insurance company for ten or eleven years ; that it was the custom among insurers, not to pay for boats lost from the stern when at sea, a boat thus carried not being safe ; and that there was as much danger to boats in low-decked vessels as in high. The witness further testified, that, in his opinion, until the sale of the cargo, wages and provisions were properly chargeable to general average ; that after that, if there was an abandonment, the wages and provisions were abandoned with the ship and the enterprise ended ; and that in case of a policy on time, a disaster, and a discharge and acceptance of the cargo at the place of refuge, there would be no charge of wages and provisions, as such, because the crew might be discharged ; but that necessary charges for care and superintendence would be proper ; and that the general average is not to be added to the partial loss, to make up the fifty per cent which authorizes an abandonment.

The judge ruled as follows :

1. That to constitute a technical total loss, there must be proved a loss to the amount of fifty per cent on the sum insured without deducting the premium.

2. That in making the estimate of the loss, in order to ascertain whether it amounted to fifty per cent, the items properly carried to the account of general average should not be included.

3. That the expenses incurred to ascertain the extent of the loss, should not be included in the charges which were to determine whether the loss amounted to fifty per cent.

4. That it should be referred to the jury, to decide whether by the custom of Boston, as proved, the loss of the boat at the stern davits, should be included among such charges, or be charged to the underwriters at all.

The judge further ruled, that in a policy on time like the present, where a vessel proceeds to a port of necessity, the clause providing that wages and provisions shall go to the general average only, applies to such charges only as accrue up to the time when the general average ceases by a sale or other disposition of the cargo ; that a reasonable allowance for portage bill, including wages and provisions of officers and crew,

for such reasonable time as would be requisite to make the repairs, should be allowed as part of the cost of the repairs ; that, therefore, if the jury were of opinion, that the sum estimated by the surveyors, of $217·50 for wages, and $75 for provisions, was the reasonable amount, and one and a half month the reasonable time, then those sums ought to be put down towards the partial loss of fifty per cent necessary to justify an abandonment; that if the jury were of opinion, that these sums were too high, they should make such deductions as to bring them within the reasonable amount of the portage bill to the time required ; that these ought not to go to general average, but should, in the first instance, be adjusted as part of the partial loss ; that this allowance should be' put down without the deduction of one third new for old ; and that if the voyage was ended at Bermuda on the 12th of January, 1836, right or wrong, necessary wages and provisions thereafter for a reasonable time for the repairs, should be charged to partial loss.

The jury returned a verdict for a total loss.

The defendants moved for a new trial for the following, among other reasons :

1. Because the verdict was against the evidence in the case.

2. Because the judge instructed the jury, that wages and provisions after the sale of the cargo on the 12th of January, 1836, until a reasonable time had elapsed for the repair of the vessel, should be charged and added to the items of partial loss, in order to determine whether a technical loss had occurred in the case.

3. Because the jury found, that the loss of the stern-boat at sea was within the policy, and so was to be included in the estimate, in determining whether a constructive total loss had happened.

The Court were to order a new trial, if the ruling of the judge was erroneous, or if a new trial should be thought proper for any of the causes alleged by the defendants ; otherwise, judgment was to be rendered on the verdict, after the amount of a total loss should be ascertained by an assessor, or otherwise, as the Court should order, and the verdict corrected.

*Choate* and *Peabody*, for the defendants, to the point, that

June 20th,
1838.

the leaning of courts was rather against abandonments for constructive total losses, cited *Goss* v. *Withers*, 2 Burr. 683 ; *Mitchell* v. *Edie*, 1 T. R. 608 ; to the point, that the defendants were not liable for the loss of the boat from the stern davits, 1 Phillips on Ins. 255 ; Stevens on Average (Phillips's ed.) 67, 369 ; Benecke, (Phillips's ed.) 382 ; *Brooks* v. *Oriental Ins. Co.* 7 Pick. 259 ; to the point, that where a vessel with a cargo is compelled to proceed to a port of necessit · for repairs, the wages and provisions of the crew during the detention of the vessel, are to be brought into general average, and were, therefore, not to be added to the partial loss in order to make up the fifty per cent which authorizes an abandonment, 1 Phillips on Ins. 494 ; 2 Phillips on Ins. 346 ; *Padelford* v. *Boardman*, 4 Mass. R. 548 ; *Walden* v. *Leroy*, 2 Caines's R. 263 ; *Potter* v. *Ocean Ins. Co.* before *Story* J., Circuit Court U. S. Oct. term 1837 ; *Orrok* v. *Commonwealth Ins. Co. ante, p.* 456 ; *Dupuy* v. *United Ins. Co.* 3 Johns. Cas. 182 ; *Dickey* v. *New York Ins. Co.* 4 Cowen, 245 ; *Maggrath* v. *Church*, 1 Caines's R. 196 ; *Jumel* v. *Mar. Ins. Co.* 7 Johns. R. 412 ; *Pezant* v. *National Ins. Co.* 15 Wendell, 453 ; Benecke on Ins. 473 ; *Lewis* v. *Williams*, 1 Hall, (New York) 441, 444 ; 3 Kent's Comm. (3d ed.) 329, 339 ; Cleirac, 278 ; 2 Valin, 101 ; 2 Emerigon, 176, 182, 183 ; *Budd* v. *Union Ins. Co.* 4 M'Cord, 4 ; *Lapsley* v. *U. S. Ins. Co.* 4 Binney, 502 ; to the point, that, at any rate, the sale of the cargo on the 12th of January, 1836, put an end to the enterprise, and from that time wages and provisions not only ceased to be general average, but were not chargeable to the insurers at all, *The Gratitudine*, 3 Rob. Adm. R. 263 ; *Dunham* v. *Commercial Ins. Co.* 11 Johns. R. 321 ; *Shapley* v. *Tappan*, 9 Mass. R. 20 ; *Richardson* v. *Maine Ins. Co.* 6 Mass. R. 121 ; *Robertson* v. *Ewer*, 1 T. R. 127 ; *Fletcher* v. *Poole* and *Eden* v. *Poole*, cited in Park on Ins. (2d Am. ed.) 53, 54 ; *Spafford* v. *Dodge*, 14 Mass. R. 79 ; *Sage* v. *Middletown Ins. Co.* 1 Connect. R. 239 ; *Martin* v. *Salem Mar. Ins. Co.* 2 Mass. R. 429 ; *Power* v. *Whitmore*, 4 Maule & Selw. 141 ; Beawes's Lex Merc. 166 ; 1 Phillips on Ins. 347, 352 ; 2 Phillips on Ins. 262 ; and to the point, that if wages and provisions were to be added to the partial loss, the deduction of one third was to be made, *Da Costa* v. *Newnham*, 2 T. R. 413

*C. G. Loring* and *F. C. Loring*, for the plaintiff, to the point, that wages and provisions, under the circumstances of the present case, were in the nature of general average and were to be added to the partial loss in determining whether a technical total loss had occurred, or were to be included in the computation as expenses necessary for the care and preservation of the vessel during the repairs, cited *Potter* v. *Ocean Ins. Co.* before cited ; *Sewall* v. *U. S. Ins. Co.* 11 Pick. 90 ; 1 Phillips on Ins. 252, 253, 347, 348, 349, 416, 494 ; 2 Phillips on Ins. 242 ; *Padelford* v. *Boardman*, 4 Mass. R. 548 ; Benecke, 473 ; Stevens & Benecke, (Phillips's ed.) 402 ; *Pezant* v. *National Ins. Co.* 15 Wendell, 453 ; *Lapsley* v. *U. S. Ins. Co.* 4 Binney, 502 ; *Potter* v. *Providence Washington Ins. Co.* 4 Mason, 298 ; to the point, that the clause in the policy providing that the insured shall not have the right to abandon the vessel unless the amount which the insurers would be liable to pay *under an adjustment as of a partial loss*, shall exceed half the amount insured, did not exclude the charge for wages and provisions, *Winn* v. *Columbian Ins. Co.* 12 Pick. 285 ; Benecke on Ins. 166, 425 ; *Wadsworth* v. *Pacific Ins. Co.* 4 Wend. 33 ; *Padelford* v. *Boardman*, 4 Mass. R. 549 ; Hughes on Ins. 374 ; *Sewall* v. *U. S. Ins. Co.* 11 Pick. 90 ; to the point, that the deduction of one third new for old, was not to be made in the case of wages and provisions, *Potter* v. *Ocean Ins. Co.* before cited ; to the point, that the premium was to be deducted, in determining whether the amount for which the insurers were liable under an adjustment as of a partial loss, exceeded half the amount insured, *Brooks* v. *Oriental Ins. Co.* 7 Pick. 267 ; and to the point, that the defendants were liable for the loss of the stern-boat, *Blackett* v. *Royal Exch. Ass. Co.* 2 Crompton & Jervis, 244 ; *Crofts* v. *Marshall*, 7 Carr. & Payne, 607 ; 1 Phillips on Ins. 255.

PUTNAM J. delivered the opinion of the Court. This is an action upon a policy of insurance, for $ 2,000 upon the brig Alvara, valued in the policy (premium included) at $ 4,000. The risk was for one year, and it was proved that within the year, on her passage to the West Indies, sea damage was sustained to a considerable extent, which rendered it necessary for her to go to Bermuda in distress, to be repaired. Two surveys

*Marginal note: Hall v. Ocean Ins. Co.*

*Marginal note: March 11th 1839.*

were there had, and the result was, that the captain undertook to sell the brig. And the question is, whether there was a legal necessity for the sale. If there was, the plaintiff should recover for a total loss ; but otherwise the defendants should be subjected only to a partial loss.

According to the plaintiff's estimate, founded on the surveys, the amount falls short of one half of the amount insured. But the plaintiff claims a right to add 25 per cent to the items of expenses, and with that addition there would be a technical total loss. And the jury have found a verdict accordingly, although it does not very satisfactorily appear, that there was any reason to suppose that the estimates at Bermuda were not sufficiently high.

The vessel was sold and repaired, so as to be seaworthy to go to Turks Island and carry a cargo of salt to New York, at a sum greatly within the estimates.

The defendants moved for a new trial, on the ground, that the verdict was against the evidence. But as a new trial is to be had for other reasons, it will not be necessary particularly to examine the evidence in the cause.

The judge who presided at the trial, ruled several points which are sustained by the whole Court.

1. That to make a technical total loss there must be proved a loss to the amount of 50 per cent on the sum insured, including the premium.

2. That in making the estimate of the loss, to ascertain whether it amounts to 50 per cent, the items which should be properly carried to the account of general average, should not be included.

3. The expenses incurred to ascertain the extent of the loss, should not be included in the charges, to make up the 50 per cent.

The principal ground on which the motion for a new trial has been granted, is in regard to the instruction, that wages and provisions, after the sale of the cargo on January 12, 1836, until a reasonable time had elapsed for the repair of the vessel, should be allowed and added to the items of partial loss, to ascertain whether a technical total loss had occurred in the case. And we all think, that the accuracy of that proposi-

tion cannot be maintained.   The general average expenses have no tendency to show the amount of the particular average of the ship.   The former must be paid, whether the ship is repaired or not.   Those expenses arose in the saving of the ship, &c.. from the impending peril, and placing the same where the owner could survey her, and make a reasonable estimate of the expenses requisite to repair her.   But those expenses are to follow afterwards.   They are not increased or diminished by the greater or less sum which has been or will be paid upon the contribution to the general average.

In Stevens & Benecke, by Phillips, 367, note, it is well observed, that " the loss by stranding is often both general and particular average ; the general average, consisting of the expenses incurred for saving the ship, cargo, and freight, in common ; the particular average, in the distinct damage and loss on each interest."

So, if the damages happened by extraordinary perils of the sea and it became necessary to seek a port for the safety of the ship, &c., the expenses of navigating her there should be brought into general average, and the particular average on the ship would be borne by the owner of the ship.   1 Phillips on Ins. 347 ; *Padelford* v. *Boardman*, 4 Mass. R. 548.  Mr. Phillips has set down with considerable particularity many of the items which are to be considered as general average charges.

Now in the case at bar, the inquiry was, whether there was a *particular average* exceeding 50 per cent of the value in the policy.   If there was, then there was a technical total loss ; otherwise, if not.   The calculation should be made upon the amount which would be required to put the vessel in complete repair, without reference to or including the expenses which had been already or should be incurred, which were to be paid by general contribution.

But it occurred to the judge at the trial, that the services of the officers and people might be wanted during the time when the repairs should be making, and if they should be discharged and the vessel should be repaired, that it would be difficult, if not impossible, at some times and places, to procure other officers and seamen to prosecute the voyage ; and it was under this impression, that the instruction was given, " that a reason-

able allowance for portage bill, including wages and provisions of officers and crew for such reasonable time as would be requisite to make the repairs, should be allowed as part of the cost of the repairs ; that, therefore, if the jury were of opinion, that the sum estimated by the surveyors, of $217 for wages, and $75 for provisions, was the reasonable amount, and one and a half month the reasonable time, then those sums ought to be put down towards the partial loss of 50 per cent, necessary to justify an abandonment ; that if the jury were of opinion, that these sums were too high, they should make such deductions as to bring them within the reasonable amount of the portage bill to the time required ; that these ought not to go to general average, but should, in the first instance, be adjusted as part of the partial loss ; that this allowance should be put down without the deduction of one third new for old ; and that if the voyage was ended at Bermuda on the 12th of January, 1836, right or wrong, necessary wages and provisions thereafter for a reasonable time for the repairs, should be charged to partial loss."

It is very clear, that such charges are not to be put to the account of general average ; they would not be sustained for the *general good*, but for the *particular benefit of the ship*. The voyage was broken up ; and it seems to us that the owner of the ship must bear these, as he bears the other expenses incident to the ship. He would have no claim upon the underwriter for those charges. It may be a very prudent thing for the master to pay a mate and seaman for a month or more, for holding themselves in readiness to serve at a minute's warning, under such circumstances ; but that expense would be a charge upon the freight. It would cost the owner of the ship just so much more to earn his freight, than it would if he were not subjected to the payment of extra wages or services.

But the services of the officers and seamen might be rendered by them as laborers, in making the repairs ; and in such case their labor would be chargeable, just as if other laborers had been employed to make the repairs. And it would be necessary, that some person should be employed on the part of the owner to superintend the repairs, whose work or business should be, to see that they were completely made ; and

this charge is to be considered as for part of the labor em-
ployed in the reparation.

"But," says Benecke, (Phillips's ed. 158,) "provisions
and wages during a detention, the expenses of which belong
not to general average, cannot, according to the nature of the
subject, be considered a particular average at the charge of the
underwriters of the vessel, but must be paid out of the
freight." Benecke & Stev. (Phillips's ed.) 389, 390 ; Ab-
bott, *part* 3, *c*. 8, § 7. Indeed it is provided by a clause in the
policy, that the underwriters are not answerable for wages and
provisions except in general average. They are to be borne
by the owner of the ship during quarantine. 1 Phillips on
Ins. 345.

And so if the vessel should be frozen up in the ice and the
voyage should be prolonged in an extraordinary manner, the
extra charge of the portage bill is never made against the un-
derwriters upon the ship.

And one third of the expense of labor, as well as of the
materials employed in making the repairs, is to be deducted.
Benecke & Stev. (Phillips's ed.) 385.

It was objected for the defendants, that they were not liable
to pay for the boat which was carried away from the stern.
The judge left it to the jury to decide, whether, according to
the custom of Boston, the loss of the boat at the stern davits
should be charged among the items of particular average, to
make up the 50 per cent. If it had been cut from the stern,
it would have been paid for in general average. *Lenox* v.
*United Ins. Co.* 3 Johns. Cas. 178. It was there considered
as a necessary part of a ship's furniture. And we consider it
in the same light, and as part of the ship, as between assurer
and assured.

Roccus, *p.* 19, *note* xx. is of a different opinion, where the
question is between vender and vendee, holding that the boat
would not be considered as an appurtenance of the ship. And
so when the ship is confiscated ; the boat is not included in
the decree of confiscation. He assigns the reason to be, that
penal laws are to be construed strictly. In England, for the pur-
poses of insurance, the boat is considered a part of the ship.

*Hall
v.
Ocean Ins.
Co.*

1 Phillips on Ins. 255, and cases there cited ; *Blackett v. Royal Exch. Ass. Co.* 2 Crompt. & Jervis, 244.

We think it is to be considered as included in the policy upon the ship, tackle, apparel, and furniture, or other words equivalent ; and that *primâ facie* the insurers are liable. It was not competent for the defendants to give in evidence the opinions of witnesses, that the defendants were not liable to pay for the loss of any part of the ship's furniture or appurtenances, which was included in the terms or description of the property insured. Such parol evidence would contradict the written contract.

But there is a rule of law which is of universal application, that a party shall not recover for an injury or damage incurred from his own fault. If the boat was improperly carried or slung at the stern davits, the underwriters are not to be charged with the loss of it. But the burden would. be upon the defendants, to show a good reason why they should not pay for the loss or damage of any thing which is *primâ facie* included and covered by the policy. And we think, that, in the case at bar, they have failed to sustain their defence in this respect.

The Court are all of opinion, that the particular average loss is to be made up in the usual mode, deducting one third new for old, independently of the general average and of the expense of ascertaining and proving the loss ; and if upon such a calculation the sum exceeds one half of the amount insured, then, and not otherwise, the insured has a right to abandon for a total loss ; and if there were no cause of abandonment, there would be no necessity for a sale of the vessel on account of damage merely ; that, in making the computation, the sum stated in the valuation, including the premium, is to be regarded ; that to make.it a technical total loss, the expenses of the repairs, deducting one third new for old, must exceed one half of that sum ; that a fair allowance for superintendence and for the custody of the vessel, if necessary, while the repairs are going on, should be made, which allowance is to be charged to the account of labor, from which, one third is to be deducted ; but that wages and provisions of officers and crew while the ship is undergoing repairs, are not to be computed as part of the particular average.

There are other points which arose in this cause, which have been considered and decided in the case of *Orrok* v. *The Commonwealth Insurance Company*, to which we refer.

The result is, that a new trial must be had, unless the plaintiff shall, upon advising with his counsel, elect to take a verdict for a particular average loss on the vessel. Considering that the expenses of the repairs, even if the wages and provisions and other items in the portage bill, which were general average charges, were included, would not amount to 50 per cent, according to the estimates in the case, we have thought it proper to make this suggestion.

*Verdict set aside and new trial granted.*