## DENNIS v. HOME INS. CO.

### (District Court, S. D. New York. March 8, 1905.)

MARINE INSURANCE—EQUIPMENT OF YACHT—BOATS "OF AND IN" VESSEL.

> A marine policy insured "in port and at sea, * * * at all times, in all places and on all occasions, * * * upon the hull, spars, sails, materials fittings, boats (including launches, steam or otherwise, if any), furniture, provisions, stores, * * * boilers, etc., of and in the schooner yacht Rosemary," against all manner of marine perils, and the furniture and boats against fire when laid up on shore. *Held*, that a naptha launch, part of the equipment of the yacht, carried on davits when she was under way, and used as a means of communication with the shore when in port, while being so used in the usual way between the yacht and shore was "of and in" the yacht, and covered by the policy.

In Admiralty. Action on marine insurance policy.

Wing, Putnam & Burlingham, for libellant.

James J. Macklin, for respondent.

ADAMS, District Judge. This action was brought by John B. Dennis, the owner of the schooner yacht Rosemary, to recover from the Home Insurance Company the loss suffered by the sinking of a naptha launch, on the 6th of August, 1902. The yacht at the time was insured under a policy of insurance covering a period of a year from the 21st day of September, 1901, which, among other things, provided as follows:

> "As employment may offer, in port and at sea, in docks and graving docks, and on ways, gridirons and pontoons, at all times, in all places and on all occasions, services and trades whatsoever and wheresoever, under steam or sail, upon the hull, spars, sails, materials, fittings, boats (including launches, steam or otherwise, if any), furniture, provisions, stores (electric light installation and plant, if any), machinery, boilers, etc., of and in the Schooner Yacht Rosemary."

> * * * * * * * * * * * *

> "Touching the adventure and perils which we, the said assurers, are contented to bear and take upon us, they are of the Seas, Men-of-War, Fire, Enemies, Pirates, Rovers, Thieves, Jettisons, Letters of Mart and Countermart, Surprisals, Takings at Sea, Arrests, Restraints, and Detainments of all Kings, Princes and People, of what nation, condition or quality soever, Barratry of the Master and Mariners, and all other perils, losses and misfortunes that

136 F.—31

·have and shall come to the hurt, detriment or damage of the said yacht, etc., or any part thereof."

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"It is understood and agreed that should any part of the furniture, tackle, boats or other property of this yacht be separated and laid up on shore during the period of this policy, then this policy shall cover the same against the risk of fire only to an amount not exceeding its proportion of $1500.00 which amount ceases to attach on board yacht at such times."

A part of the equipment of the yacht was a naptha launch, which was ordinarily carried on davits when the yacht was under way, but used in ports as a means of communication with the shore. She was being so used on the 6th of August, 1902, between the yacht and club station on Shelter Island. During a trip at night, the launch collided with an unlighted boat boom belonging to another yacht, with the result that the stack of the launch was torn loose and the naptha on board ran out of its reservoir into the bottom of the launch and caught fire. The launch was practically destroyed thereby and it is sought to recover from the respondent its proportion of the loss.

The defence is, that the loss occurred not while the launch was "of and in" the yacht but when it was off the yacht, separate and apart therefrom, and navigating under its own power and engaged in its particular business and by reason thereof was not covered by the policy at the time of the loss.

The decision turns upon the construction to be given to the policy, especially in connection with the use of the words "of and in." The insurance is expressly intended to cover the yacht, "(including launches, steam or otherwise, if any)" \* \* \* "in all perils, losses and misfortunes that have and shall come to the hurt, detriment and damage of the said yacht, etc., or any part thereof."

It is well settled that a "ship's launch is comprised in the rigging and apparel of the ship, because it is absolutely necessary for the navigation. The same is the case with the smaller boats"—Emerigon on Insurances, 1850, Boston Ed. 144—and it would seem singular if the launch of a yacht taking guests ashore was not intended to be covered. Of course, if a ship's boat were used in a way not connected with the business of the ship, it is evident that a policy, without some special provision, would not be regarded as covering the boat, but where it is engaged in performing the proper business of the vessel, to which it belongs, it would be straining the construction of a policy to hold it was not then a part of the vessel and covered by such insurance as this contract provided for. The principle is that "every underwriter is presumed to be acquainted with the practice of the trade he insures; and it must be supposed to be the intention of the contract to conform the indemnity to the known practice." Parsons v. Mass. F. & M. Ins. Co., 6 Mass. 197, 203, 4 Am. Dec. 115. This was a case of a loss of part of a cargo in boats on a trading voyage. While taking some of the cargo ashore it was lost. The court said (page 208 of 6 Mass. [4 Am. Dec. 115]):

"For although, in the commencement of the voyage, the insurance did not attach upon the goods, while in the act of transportation in boats to the brig, nor until they were on board, and this from the terms of the policy, yet dur- ·ing the voyage, the goods were as much protected by the policy in the boats

while they were employed as auxiliary to the legitimate purposes of the voyage, as they were on board the ship. For all the purposes of the voyage, boats so employed are very reasonably considered as part of the ship."

There can be no doubt for the purposes of insurance, that the boats are generally considered a part of the ship, although an insurer would not be liable if he proved that the boat was improperly used or carried. Hall v. Ocean Ins. Co., 38 Mass. 472, 481, 482.

There is no proof in this case that the boat was improperly used. On the contrary, it appears that she was engaged when the accident happened in the regular business of the vessel. It seems to be clear in the absence of proof to the contrary that the launch was intended to be covered by the policy when being used in the ordinary manner. Unless the express terms of the policy decisively repel the customary inference, the insured is entitled to recover in a case where the loss of a boat occurs during such use. Arnould on Marine Insurance, §§ 57, 58, 221.

This policy bears every evidence of an intent of the parties to cover all risks to which the yacht or its appurtenances might be subjected, even to the extent of insuring boats and fittings when separated from the yacht and laid up on shore. It is not conceivable that the parties designed to omit covering the boats, while being used for an every day purpose when the vessel was in commission and in port.

Decree for the libellant.