Sewall, J.
The demand of the plaintiffs is upon a policy of in surance subscribed by the defendant to insure the schooner Alpheus and Nancy, valued at 4000 dollars, for a voyage from Boston to Amsterdam, from thence to the Cape de Verd Islands, and from thence to her port of discharge in the United States.
The policy contains this clause : “ But the assurers are not liable for any partial loss on sugar, flaxseed, bread, tobacco, or rice, under seven per cent.; nor on salt, hemp, flax, grain, fish, fruit, hides, skins, or other goods deemed perishable in their own nature, unless the damage happen by stranding or bilging, and amount to seven per cent.: nor on .any other articles, or on vessel or freight, under five per cent., excepting, in all cases, general average.’’’
The interest of the insured in the vessel is admitted; and the other facts agreed, which are material to the decision of [ * 549 ] * the Court in this case, are, that in the passage from the Cape de Verd Islands to Rhode Island, in the United *481 States, the vessel insured was damaged in her sails and rigging by the winds and storms, and in consequence, it became necessary to put into Norfolk, in Virginia, to refit; that she was there repaired, and afterwards completed the voyage insured. The expenses in repairing the damages suffered by the vessel, and in making a port, and in the wages and support of the crew during the detention, which it is agreed was for the interest of the concerned, and the amount of the cargo and freight preserved, are particularly stated.
The repairs of the vessel, deducting the usual discount upon new articles to replace old, amount to 156 dollars 30 cents; and the expenses in seeking a port, and in the detention to refit, including the wages and provisions of the crew, amount to 245 dollars 19 cents. If the repairs and expenses are wholly chargeable to the vessel, the underwriters are liable for a loss of 7-^, per cent, of their subscriptions; but if the repairs are chargeable distinctly to the vessel, and the other expenses are a general average, the partial loss upon the vessel, being less than five per cent., is excluded by the policy, and not recoverable ; and for the average the underwriters upon the vessel are liable for a loss of 3f¡?s per cent., upon their subscriptions, if the items of wages and provisions for the crew during the detention are to be allowed.
Memoranda of a similar import with the clause cited from this policy are usual in English and other foreign policies. The exception, more particularly applicable in this case, is frequently expressed in English policies in these words: “ The ship and freight are warranted free from average under three per cent., unless general, or the ship be stranded,” where average means a particular partial loss. (1)
In the policy under consideration, the underwriters are not liable for any partial loss upon the vessel or freight under five per cent., excepting a general average.
Partial loss implies a damage sustained by the ship or cargo, which falls upon the respective owners of the property * so damaged ; and when happening from any peril in- [ * 550 ] sured against by the policy, the owners are to be indemnified by the underwriters, unless in cases excepted by the express terms of the policy, as in the case at bar, by an exception provided against trifling demands.
General average expresses that contribution to a loss or expense voluntarily incurred for the preservation of the whole, in which all who are concerned in ship, freight, and cargo, are to bear an equal part, proportionable to their respective interests. And for the loss *482 incurred by this contribution, however small in amount, the respective owners are to be indemnified by their insurers.
The clause “ free from average, unless general, or the vessel be stranded,” part of the memorandum usual in English policies, excluding certain risks, has been the subject of discussion in several decisions, which are reported. In Cantillon vs. London Assurance Company, before Lord Chief Justice Ryder, (2) and Bowring vs. Elmslie, before Lord Kenyon, (3) and in the more recent case of Burnett vs. Kensington, (4) before him and the other justices of the King’s Bench, when all the previous decisions were cited and examined, the phrase “unless the ship be stranded” was construed a condition, which having happened, the insured was let in to prove a partial loss otherwise excluded by the exceptions, and, although not certainly, occasioned by the stranding. In Wilson & Al. vs. Smith, (5) decided by Lord Mansfield, Justice Buller, &c., confining the authority to the point decided, “ unless a general average ” was construed an exception; and in the case of M’Andrews vs. Vaughan, (6) before Lord Kenyon, the decision must be understood to have been upon the same construction. And in those cases the insured was not let in to prove a partial loss within the exceptions, although accompanied with a general average.
The clause cited from the policy in the case at bar is not liable to these uncertainties, and in the case of general average, [*551] * is obviously an exception from the enumerated exceptions, not otherwise affecting them, and is perhaps inserted from abundant caution, where partial loss is apparently to be construed in strictness to intend a damage or direct loss in the ex cepted cases.
In the case at bar, the partial loss or damage sustained by the vessel, and the contribution to which the same property became liable, by the expenses voluntarily incurred in seeking a port to refit, were occasioned, in the first instance, by the same accident. The cases are distinguished, however, by the terms of the policy, and in the nature of the thing. The damage sustained by the vessel is the partial loss ; but the contribution is a charge to which the property saved is made liable by the marine law ; for the former being under five per cent., the underwriter is not liable, by an express exception, which is not extended to the latter. And that these are not to be blended by any constructive inference, appears in the several adjudged cases that have been mentioned. And this opinion is conformable to the usage of merchants and insurers, as it has been understood upon inquiry
*483 Considering the general average as the only loss recoverable in this case, it becomes important to ascertain the items to be allowed in estimating it; or, rather, whether the wages and provisions of the crew, during the detention from the usual course of the voyage, are proper items in the general average. It is understood that merchants and insurers are not agreed upon this question, and that it is not determined by uniform usage and practice.
The rules of insurance admitted with us, chiefly in conformity to English decisions, have determined that extraordinary expenses incurred during the course of a voyage, or an unavoidable detention from an accident which interrupts it, are charges or losses upon the freight and profits of the voyage, and are not recoverable against an insurer upon the ship or her lading; (7) and upon this general principle, that every loss is to be referred to its immediate occasion and subject-matter. The expenses of a detention are no direct * diminution of the value, and are therefore not [ * 552 j recoverable against the insurer .of the vessel; but they diminish the value, and are therefore recoverable against the insurer of the freight. Thus in Fletcher vs. Poole, (8) before Lord Mansfield, the wages and provisions expended during a detention to repair in a port to which the vessel had been driven by distress of weather, were held not recoverable against an insurer upon the vessel. And in Eden vs. Poole, (9) before Justice Buller, a loss by wages, provisions, and demurrage, during a detention to repair in a port, to which the master bore away, in consequence of distress of weather and the threatenings of the crew, was held not recoverable upon a policy on ship and goods.
Both these cases exclude the circumstance of a voluntary and deliberate resort to a port for the particular purpose of refitting, with a view to the common safety of the vessel and cargo, and to avoid the impending danger of continuing the voyage without some necessary repairs.
In the case of Lateward vs. Curling, (10) before Lord Mansfield, a loss by wages and provisions expended during a detention of the ship in going from Bengal to Bombay to repair, was held not to be recoverable against an insurer upon the ship; but he said there might be cases where these expenses ought to be allowed as exceptions to the general rule, and he is reported to have instanced as exceptions cases where the expense was absolutely necessary, and occasioned by some perils insured against by the policy — circumstances by which no case could be distinguished, being essential to every recoverable loss. It is more probable, therefore, that Lord *484 Mansfield distinguished the supposed exceptions by circumstances applicable to cases of general average.
In Da Costa vs. Newnham, (11) the ship insured, having met with an accident in the course of her voyage from Leghorn to London, was obliged to put into Nice to repair. Justice Butter considered this a case of general average, and the insurers [ * 553 ] upon the ship were holden liable, in this view, * among others, for the charges of loading and unloading the cargo, and taking care of it, and the wages and provisions of the workmen hired for the repairs ; the ship having been obliged to go into port for the general benefit of the whole concern. The crew had been discharged, and therefore it was not necessary in that case to decide the precise question, whether their wages and provisions were recoverable in a case of general average. And upon this particular question there seems to be no complete authority from any adjudged case in the English reports, (a)
Magens enumerates the expenses and damages, which, according to the ordinance of Hamburgh, and some other foreign ordinances, constitute and are commonly accounted a general or gross average ; (12) among which are extraordinary pilotage, and charges which a ship shall be at from springing a leak, or being obliged to take shelter in a harbor, by having received some other damage. Included in this article are sailors’ victuals and wages ; and upon this subject Magens cites Langenheck's annotations, and with him distinguishes a detention occurring in the course of the voyage, or by an accident which immediately interrupts it, which he instances in the case of a ship accidentally surprised and frozen up at Petershurgh by an unexpected frost, when sailors’ wages and victualling during the detention are not to be made good by a general average, but are to be borne by the ship alone. And a like detention happening, when the master, after sailing, had, in consequence of damage received in a storm, found it necessary, and determined to seek a proper place to repair, where he was afterwards frozen up, in such case the expense of victuals and wages are to be admitted in a general average.
Beawes (13) lays it down as an established principle and usage, that where a ship is forced to enter a port, to repair the damage she has suffered in a storm, being unable to continue her [ *554 ] voyage without apparent risk of being lost; that *in such case the wages and provisions for the crew, from *485 he day it was resolved to seek a port to refit the vessel, to the day of her departure from thence, with all the charges of unloading and reloading, anchorage, pilotage, and every other expense incurred by this necessity, shall be brought into a general average.
Marshall, in citing this, observes that this point has not been expressly decided in any English court of justice ; yet that the principle seems to have been acceded to at different times by judges of great authority.
A detention in consequence of a master’s seeking a port to avoid an enemy, is mentioned by Bynkershoek as a case of general average, in which sailors’ wages and provisions were allowed by the decisions of the several courts in Holland. (14)
A liberal construction in this respect appears conducive to the interest of insurers, in the benefit they derive from every reasonable precaution against impending and extraordinary risks, such as the continuing at sea with a vessel disabled in her sails and rigging. By rendering the concerned liable in a general contribution to defray the extraordinary expenses of seeking a port, and of the detention there to refit, the hazard from opposing interests is avoided; and a security common to all the concerned is purchased, as i ought to be, at their common risk and expense.
Upon the whole, there may be some difficulty in deciding, under the circumstances of a particular case, whether a detention by an) accident, happening after the commencement of a voyage, is or is not a case of general average. But when the case is established tc be of that nature, and sailors’ wages and provisions make a part of the expense necessarily incurred, this seems a sufficient reason for allowing them. The text writers, and the ordinances and decrees of several great commercial republics, favor it; and there is no opposing authority, applicable to the case supposed, in the decisions of this Court, or of the courts of Great Britain, from whom our rules of maritime law are generally derived. But the definition of a general average, received in the courts of * both [ * 555 ] countries, includes the wages and provisions of seamen, in cases like this now under consideration.
In the case at bar, the seeking the port of Norfolk to refit, and the stay there, are agreed to have been a deliberate and necessary departure and detention from the course of the voyage for the benefit of all concerned. This was, therefore, a case of general average, and the sailors’ wages and provisions, forming suitable items of the expenses thereby incurred, are to be allowed ; and the plaintiff is to have judgment, in which his damages are to be reckoned at *486 per cent† of the defendant’s subscription, with interest on the amount from the time the loss became due.
Padelford and Tillinghast for the plaintiffs.
Sprout for the defendant, (b)

 Marsh. 139, 140. — Park. 111, 114.

 Cited 3 Burr. 1553 —Marsh. 140.

 Marsh. 146.

 7 Term Rep. 210, 21?

 3 Burr. 1550.

 Marsh. 150. — Park. 114

 Marsh. 617 623.

 Marsh. 620. — Park. 59

 Marsh. 621. —Park. 54.

 Marsh. 464. — Park. 125.

 2 Term Rep. 407.

 [The case of Power vs. Whitemore, 4 M. & S. 141, establishes that wages and pro* visions, in such case, are not the subject of general average. See Plumer vs Williams, 3 M. & S. 482.— Ed.]

 Mag. 64—69.

 Lex Merc. 161. — Marsh. 469.

 Bynk. Quest. Jur. Priv. L. 4, c 25, 26.

 This average was produced as follows, viz.: —

Dolíais

Vessel valued at................................................-........4000
Cargo. ...............................................................2300
Freight..................................................................750
7050
Partial loss chargeable to the vessel, viz.: —
Rigging................................................................45,00
Sails and making.......................................................100,00
Masts..................................................................69,57
Spunyarn..............................................................19,87
234,44
Deduction on new materials— £ ...................................78,14
156,30
General average to be adjusted by contribution, viz.: —
Pilotage, 40,00 — Entry, 3,50 — Harbor master, 1,25.........................44,75
Surveys, 13,98 — Wharfage, 19,50 — Small stores, 6,11......................39,59
Notary, 9,92—Provisions, 30,00 — Wages, 100,00—Commissions, 20,93......160,85
245 19
As 7050 : 245,19 : : 4000 : 139,11
4000 : 139,11 : : 100 : 3,48