## James L. P. Orrok *et al. versus* Commonwealth Insurance Company.

Where a survey was called, in a foreign port, upon a vessel which had sustained an injury, and the surveyors recommended a sale, it was *held*, in an action against the insurers of the vessel, that it was not competent for the insured to prove by the testimony of one of the surveyors, the declarations and opinions of another surveyor while engaged in such survey, it appearing, that the insured had the deposition of such other surveyor in their possession ; but that, if this point were less clear, the subsequent introduction of such deposition by them was a waiver of an exception founded on the rejection of such testimony.

In such case, on the question whether the cost of repairs would exceed half the value of the vessel, evidence tending to show, that she would have been of less value after being repaired than she was before the injury, was held to be inadmissible.

If the injury sustained by a vessel insured is not of such a nature and extent as to warrant an abandonment, it is not such a case of necessity as will warrant a sale by the master.

In determining whether the expenses of repairing an injury sustained by a vessel insured under a valued policy, will exceed half of her value, and thus constitute a technical total loss, the valuation of the vessel in the policy is conclusive as to her value.

Where, in such case, the policy provided, that the insured should not have a right to abandon unless the loss exceeded half the amount insured, and the valuation included the premium, it was *held*, that the loss must exceed one half of the whole valuation, including the premium, to authorize an abandonment.

If it is necessary to raise money at marine interest for the purpose of repairing a vessel insured, the rule of deducting one third new for old, is to be applied to such interest, in determining the amount for which the insurers are liable.

The vessel's proportion of items of general average is not to be added to the partial loss, in order to make up the loss of fifty per cent., which authorizes an abandonment.

Where, in an action upon a policy of insurance, the question was, whether the loss was partial or constructively total, and the judge " desired the jury, if they found for a total loss, to state the items of damage which, in their opinion, exceeded one half of the sum insured," it was *held*, that this instruction was not erroneous or irregular.

Where, at the trial of an action against an insurance company, it appeared that the sheriff, who had returned a talesman to serve on the jury, was a stockholder in such company, and this circumstance was known to the junior counsel for the plaintiff soon after the trial began, but no objection was made till after the trial had proceeded for some time, it was *held* that this was a waiver of any exception to the competency of such juror.

Orrok
*v.*
Commonwealth Ins. Co.

ASSUMPSIT upon a policy of insurance on the brig Rolla. The plaintiffs claimed for a total loss. The defendants admitted themselves to be liable for a partial loss, but not for a total loss.

At the trial, before *Putnam* J., it appeared, that the insurance was on time ; that the Rolla, on the 9th of February, 1835, during the time covered by the policy, struck upon a rock in the Mediterranean sea, while pursuing a voyage from Barcelona to Vera Cruz, intending to touch at Gibraltar for provisions ; that on the next day, after getting off the rock, she was compelled, by the injury she had received, to put into Roquetas, where the captain procured eight men to go on board and assist in pumping ; that, on the following morning, she was driven to sea, by the violence of the wind, but succeeded in reaching Malaga on the 15th of February ; that, at Malaga, by the advice of the American consul, a survey was called, and the surveyors reported, that it was necessary that the vessel should be unloaded, in order to examine her ; that this having been done, another survey was called, and a report made by the surveyors in writing, which concluded by recommending that the vessel should be sold ; and that the captain, afterwards, by the advice of the consul and in pursuance of such report, sold her by auction. The plaintiffs introduced the writen reports of both surveys.

It further appeared, that the cargo consisted of wines and other articles which were not of a perishable nature ; and that

the vessel was repaired in about ten days so as to be enabled to make a voyage across the Atlantic.

The plaintiffs abandoned the vessel to the defendants on the 5th of August, 1835 ; and there was evidence that the captain arrived in Boston on the 10th of the preceding July.

The plaintiffs contended, that their abandonment was in season to entitle them to claim for a total loss for the amount of damage. But the judge ruled, that as the captain arrived on the 10th of July, and the abandonment was not made until the 5th of August, it was not in season, and that the plaintiffs could not recover for a total loss, unless the sale was valid.

The plaintiffs introduced the deposition of John Lengo, one of the surveyors in the second survey, which was read to the jury without objection. They then offered the deposition of David Bartlett, one of the surveyors in the same survey. This deposition contained the following words, in answer to an interrogatory : " On the first survey we reported that the Rolla ought to be discharged of her cargo and hove out. On the second survey we reported what were the damages sustained by the Rolla. In the second report after the Rolla was hove out we reported, that she must have a new main stern, a number of outside plank, her ceiling taken out, a number of her timbers replaced, copper taken out and recaulked and coppered anew." The defendants objected to the reading of this portion of the deposition unless the plaintiffs would introduce the deposition of Cristoval Madueno, the third surveyor. The plaintiffs contended, that they had a right to read all or some part of the answer objected to, without reading Madueno's deposition ; but the judge ruled otherwise.

The defendants then moved the court to strike out from the deposition of Lengo all that related to any opinion of Madueno, or to the report of the survey in which Madueno acted as surveyor, and, particularly, the following portion of an answer to a direct interrogatory ; " that their opinions were, after a very particular survey, that about $4000 were necessary to repair the damage of the vessel agreeably to law." They further moved the court, to strike out so much of the report itself as expressed any opinion or recommendation of Madueno, so that it might stand before the jury as the report of Lengo

and Bartlett only.    This motion was resisted by the plaintiffs ;
but the defendants' counsel insisting, that they would have
objected to such evidence at the time it was read, if they had
not then supposed that the plaintiffs would introduce the depo-
sition of Madueno, which the plaintiffs now declared they
should not introduce, the judge ruled, that those portions of the
deposition and survey which were objected to, should not be
deemed evidence in the case.

In consequence of these rulings, the plaintiffs then read the
deposition of Madueno ; and the defendants thereupon waived
their objection to that part of Bartlett's deposition, which had
been rejected, and to all that had been ordered to be struck
out of Lengo's deposition and the survey.

The defendants introduced, as a witness, John S. Tyler, an
insurance broker in Boston, who testified, that, according to
the usual manner of adjusting losses in Boston, the expense of
the eight men from Roquetas, and that of the first survey while
the cargo was on board, would be charged as general average ;
that the expense of the second survey, if on the vessel after
the cargo was out, would be partial loss ; that the cost of
the carpenter's work and labor, and all the expenses necessary
in order to make the surveys, would follow the surveys respec
tively, and be general average or partial loss, as the principal
to which they were incident, was the one, or the other ; that
the expenses of lighterage, boat-hire, hire of the vessel in
which the cargo was put, and all the expenses respecting the
cargo, would be general average ; that wages and the cost of
provisions, from the time of bearing away for a port of neces-
sity, and, if the vessel had been repaired, during such repairs,
and until she was again upon her voyage, would also be general
average ; and that if, in order to make the repairs, money was
raised on bottomry, one third was deducted from the marine ·
interest paid, and two thirds only charged to the underwriters.

The counsel for the plaintiffs, upon the cross-examination of
Samuel F. Holbrook, a shipwright, who was introduced as a
witness by the defendants, proposed the following question :
" As this vessel and the injury to her have been described,
would she, after being repaired, be of less value than before
.he injury happened ? "    This question was objected to by the

defendants ; and the judge ruled that it could not be proposed The plaintiffs contended, that it was proper for them to show, that if the Rolla had been repaired, she would have been of less value after being repaired than she was before the injury, and wished to introduce such evidence, but the judge ruled, that it was inadmissible.

The judge ruled, that if the loss was not of such a nature as to warrant an abandonment, it was not such a case of neces- sity as would warrant a sale by the master.

The plaintiffs contended, that if the master could not have made complete repairs at Malaga, for less than one half of the value of the vessel, but could have made partial repairs at Malaga and then carried his vessel to Gibraltar and there made complete repairs, at an expense in the whole, not exceeding one half of such value, he was not bound to have made partial repairs at Malaga, and then to have gone to Gibraltar for com- plete repairs ; but the judge was of a different opinion, and instructed the jury accordingly.

The plaintiffs contended, that the valuation in the policy was not conclusive, and that they had the right to show, that the vessel was of less value, and, especially, that she was of less value at Malaga, the port of necessity ; but the judge instructed the jury otherwise, and ruled, that the valuation in the policy was conclusive.

The plaintiffs further contended, that if the valuation in the policy was conclusive, still the premium should be excluded, in determining whether the insured were authorized to abandon · and that as the valuation in the present case was $ 8000, includ- ing the premium of seven per cent, an excess of one half of $ 7440 would authorize an abandonment ; but the judge ruled otherwise, and instructed the jury, that the insured were not authorized to abandon unless the expense exceeded one half of $ 8000.

The plaintiffs contended, that in determining whether the expense of repairs authorized an abandonment, the whole of the marine interest necessary to be paid, was to be included ; but the judge ruled otherwise, and instructed the jury, that only two thirds of the marine interest were to be included, that is, that the deduction of one third new for old was to be made

from the whole cost (including the marine interest) of the items subject to such deduction.

The plaintiffs further contended, that in making up the fifty per cent, which authorizes an abandonment, the vessel's proportion of all items of general average was to be included ; out the judge ruled and instructed the jury otherwise.

The plaintiffs further contended, that the vessel's proportion of some of the items of general average, if not of all, was to be included, and, particularly, the expenses of getting the vessel into Malaga and unlading the cargo, the hire of the vessel into which the cargo was put, and the expenses of the first survey, pilotage, lighterage, boat-hire, wages, provisions and consul's fees ; but the judge instructed the jury, that in making up the fifty per cent, they should not include the vessel's proportion of any item of general average, except the expense of getting the vessel into Malaga, which would embrace only the expense of the eight men taken on board at Roquetas. The plaintiffs insisted, that every item should be taken into the account to make up the loss of fifty per cent, which the defendants would be liable to pay under an adjustment for a partial loss ; but the judge ruled otherwise, and instructed the jury as above set forth.

The plaintiffs contended, that if the voyage was broken up by the injury to the vessel, it was good ground for abandonment, or, at least, that it was proper to be considered by the jury in determining the question of total or partial loss ; but the judge ruled otherwise, and instructed the jury, that the breaking up of the voyage had no bearing upon the question before them.

The plaintiffs contended, that the master could not have obtained funds wherewith to repair the vessel ; the defendants contended, that he was bound to use due diligence to obtain them ; but the plaintiffs contended, that if, by using due diligence, he could not have obtained them, the diligence to obtain them might be dispensed with.   The judge instructed the jury, that due diligence must be used in order to ascertain the fact, whether or not funds could be obtained.

During the trial it was agreed by the parties, that the jury might find that the loss was total or partial, generally, without

determining the amount of damages, and that if they shoula find a partial loss, the court should subsequently appoint assessors to ascertain the amount. After the jury had retired, the plaintiffs suggested, that the jury had not been informed, that they might render such a general verdict, and that they might be embarrassed by thinking it necessary for them to find the specific amount of damages. The judge thereupon proposed to send a written communication to the jury, instructing them to that effect and also giving further directions. The plaintiffs objected to such further directions. The judge thereupon drew up a writing, which, after stating that the jury would find the defendants liable either for a total or a partial loss, and the court would appoint assessors to ascertain the amount of the defendants' liability in case the verdict should be for a partial loss, proceeded as follows :

" The court desire the jury, if they find for a total loss, to state the items of damage, which, in their opinion, exceed one half of the sum insured. If the jury find, that the captain used due diligence, and could not obtain funds to repair the vessel, then they will find for a total loss. So, if materials could not have been procured either at Malaga or Gibraltar."

The judge having read the same to the counsel on both sides then being present in open court, the plaintiffs objected to the part above quoted being sent or communicated to the jury ; but the writing was sent to the jury, subject, however, to such objection.

The jury returned a verdict for a partial loss only.

It appeared, that previously to the trial of this action, there being a deficiency of jurors, the sheriff returned a talesman ; and that such talesman was one of the jury that rendered the verdict. After the cause had been some time on trial, and during the closing argument of the counsel for the defendants, the senior counsel for the plaintiffs informed the court, that it had just then come to his knowledge, that the sheriff was a stockholder in the insurance company which was defendant in this action ; and he therefore objected to the trial proceeding while such talesman was on the jury, stating, that he had been informed, that the talesman was particularly friendly to the defendants ; but he offered, if the talesman were withdrawn, to

go on with the remaining eleven jurors, or to have another
substituted in his stead, to whom the judge might state the
evidence.    But the counsel for the defendants preferred pro-
ceeding with the trial and retaining the talesman, subject to this
objection ; and the trial proceeded accordingly.    The fact that
the sheriff was interested, came to the knowledge of the junior
counsel for the plaintiffs soon after the trial commenced

If the Court should be of opinion, that any of the rulings
or instructions before mentioned were erroneous, or that the
sending the written communication to the jury was wrong, or
that the returning of the talesman was a sufficient ground for a
new trial, the verdict was to be set aside and a new trial
granted, provided the Court should think that the law required
that the cause should be tried again ; otherwise judgment was
to be rendered on the verdict, and assessors to be appointed.

*Sprague*, *Simmons* and *Gay*, for the plaintiffs.    The rejec-
tion of such portions of the depositions of Bartlett and Lengo,
as related to the sayings and opinion of Madueno, one of the
surveyors, was erroneous.    The evidence rejected was not
hearsay, but a statement of the fact, that certain advice was
given to the master.    It was proper for the plaintiffs, in order
to sustain the integrity of the master, to show the advice under
which he acted.    The declarations of Madueno are to be con-
sidered as part of the *res gestæ*.    *Potter* v. *Ocean Ins. Co.*
(before *Story* J.) No. 2 Law Reporter, 23.

The plaintiffs should have been permitted to show, by means
of the interrogatory proposed to Holbrook, that the vessel
would have been of less value after being repaired, than before
the injury, as a reason for not repairing her, and so, that the
master acted fairly in determining to sell her.

The valuation in the policy is not conclusive.    *Patapsco
Ins. Co.* v. *Southgate*, 5 Peters's Sup. Court R. 604 ; *Winn*
v. *Columbian Ins. Co.* 12 Pick. 279 ; *Bradlie* v. *Maryland
Ins. Co.* 12 Peters's Sup. Court R. 378.

But if the valuation in the policy is conclusive, the premium
should be deducted therefrom, in determining whether the ex
pense of repairs was sufficiently great to authorize an abandon
nent.    *Brooks* v. *Ocean Ins. Co.* 7 Pick. 266, 267.

We contend further, that in estimating the expense of the

Orrok
v.
Common-
vealth Ins.
Co.

June 14th,
1838

repairs, the whole of the marine interest necessary to be paid, is to be included. The foundation of the rule of deducting one third new for old, is, that the vessel is made one third better by the new materials, and that the insured would be more than indemnified if no such deduction were made. But this reason is not applicable in regard to marine interest. The tendency of modern decisions is to restrict that rule, as it generally operates in favor of the insurer. 1 Phillips on Ins. 371, 372 ; *Potter* v. *Ocean Ins. Co.* No. 2 Law Reporter, 23.

We contend also, that the vessel's proportion of all items of general average is to be included, especially the expenses of getting the vessel into Malaga and unlading the cargo, the hire of the vessel into which the cargo was put, and the expenses of the first survey, pilotage, lighterage, boat-hire, wages, provisions and consul's fees. *Sewall* v. *United States Ins. Co.* 11 Pick. 90.

*Choate* and *Sewall*, for the defendants, to the point, that evidence was not admissible to show that the vessel would have been of less value after being repaired, than she was before the injury, cited *Sage* v. *Middletown Ins. Co.* 1 Connect. R. 239 ; to the point, that one third should be deducted from the marine interest, 1 Phillips on Ins. 538, note ; to the point, that the vessel's proportion of the items of general average was not to be added to the partial loss, in making up the fifty per cent, *Sewall* v. *United States Ins. Co.* 11 Pick. 90 ; *Padelford* v. *Boardman*, 4 Mass. R. 548 ; Benecke on Ins. 472 ; and to the point, that the written instructions sent to the jury were not erroneous, *Dorr* v. *Fenno*, 12 Pick. 521.

PUTNAM J. delivered the opinion of the Court.. This was assumpsit upon a policy of insurance on the brig Rolla. The plaintiffs claimed to recover on the ground, that there was a technical total loss, arising from a sale of necessity. They do not contend before the whole Court, as they did at the trial, that there was a reasonable abandonment. They can recover only for a partial loss, unless there was a necessity to make the sale of the vessel, in which case an abandonment is not required.

The verdict was for a partial loss only ; and he plaintiffs move for a new trial for various reasons, which will be now briefly considered.

And first, they insist that they ought to have been permitted to read that part of the depositions of David Bartlett and John Lengo which stated the sayings and opinion of one Madueno, who was one of the surveyors associated with Bartlett and Lengo, notwithstanding they had the deposition of Madueno taken for this cause, which they might have used if they had pleased. They contended that they were not obliged to use the deposition of Madueno, and that his declarations made to Bartlett and Lengo, were to be considered as *res gestæ*, as a matter of advice given to the plaintiffs, on the occasion when he was called to act as a surveyor. But we cannot see the matter in this light. It would be just as competent to have had the sayings and opinions of the other surveyors proved by some person who heard them, instead of being proved by the surveyors themselves ; and if such a course were allowable, the whole survey might be proved by hearsay, instead of being proved by the oaths of the surveyors. We think, that it was not competent for Bartlett and Lengo to state the sayings and opinion of Madueno. But if this point were less clear than it is, we do not think the plaintiffs could maintain their objection, inasmuch as they afterwards produced the deposition of Madueno. They are not to have the benefit of the deposition with the jury, and the benefit of Bartlett and Lengo's statement of Madueno's declarations and opinions, as matter of law, also. The introducing the better evidence of Madueno himself, was a virtual waiver of the evidence of his declarations. We think the ruling of the judge who tried the cause was correct upon this matter.

At the trial, the plaintiffs' counsel, on cross-examination of a witness, proposed this question : " As this vessel and the injury to her have been described, would she, after being repaired, be of less value than before the injury happened ? " The plaintiffs offered to give evidence, that such was the fact ; but the judge rejected it as inadmissible.

The rule for which the plaintiffs contended would be uncertain, arbitrary, visionary, and impracticable ; enlarging or contracting, just as there might or might not be evidence enough without it to induce the jury to charge the underwriters. It is analogous to the claim of a *general strain*, which has been some-

Orrok<br>
*v.*<br>
Common-<br>
wealth Ins.<br>
Co.

times put forth to make out a case against insurers. The court of Connecticut, in the case of *Sage* v. *Middletown Ins. Co.* 1 Connect. R. 239, very justly say, that such a rule of evidence "would open the door to infinite fraud, imposition and uncertainty, and put an end to all that is valuable in insurance."

We have seen some practice under the assumption of this principle, in the case of *Peele* v. *Suffolk Ins. Co.* 7 Pick. 254 It was necessary, in that case, that the expenses of the repairs should exceed $6000. I have now before me the items returned by the jury for that purpose ; and the last is "damage of leak and *straining of vessel*, not otherwise provided for, $1500." So, making up an amount of $6191·35. It was in giving the opinion in that case, that Chief Justice *Parker* observed, that there had been "a straining of the cause as well as of the vessel, in order to charge the underwriter." And such, we fear, would be the practical operation of the rule contended for by the plaintiffs in the case at bar. However substantially the ship may have been repaired within the fifty per cent, the imaginary deterioration would be reason enough to throw the whole loss upon the underwriters.

We think that the ruling of the judge was right upon this point.

Whether the damage was of such a nature as to warrant an abandonment, was a question contested by the parties at the trial ; and the judge ruled, and, as we think, correctly, that if the loss was not of such nature and extent as to warrant an abandonment, it was not such a case of necessity as would warrant a sale by the master.

The plaintiffs also contended, that if the master could not make complete repairs at Malaga for less than one half of the value of the vessel, but could have made partial repairs at Malaga, and then have carried his vessel to Gibraltar, and there have made complete repairs, and the whole expense would not have exceeded the one half of such value, the master was not bound to have made such partial repairs at Malaga, and to have gone to Gibraltar for complete repairs. The judge was of a different opinion, and instructed the jury accordingly. And the counsel for the plaintiffs very properly now abandon that point. *Vid. Hall* v. *Franklin Ins. Co.* 9 Pick. 466, 483

It was contended for the plaintiffs, that the valuation in the policy was not conclusive, but that they had a right to show, that the vessel was of less value, and especially, that she was of less value at Malaga, the port of necessity.   We think that the ruling of the judge was correct upon that point.   If there had been a total loss in fact, the value in the policy would be the sum which the underwriter must pay, notwithstanding the vessel might have greatly deteriorated after the commencement of the voyage and before the loss.   And why the agreement of the parties should be held good in the case of an *absolute*, and void in the case of a *technical* total loss, we have not been able to see.   The point was decided in *Deblois* v. *Ocean Ins. Co.* 16 Pick. 303, which case we have revised and confirmed.

It was contended by the plaintiffs' counsel, that if the valuation in the policy was conclusive, still the premium should be excluded, and that the excess of one *half*, to authorize an abandonment, was of the one half exclusive of the premium ; that as this valuation was $ 8000, including premium of seven per cent, it was the excess of one half of $ 7440, which was requisite to constitute a technical total loss.   Now we think this point is very clearly settled by the following clause in the policy :  " It is agreed that the insured shall not have the right to abandon the vessel for the amount of damage merely, unless the amount which the insurer would be liable to pay under an adjustment as of a partial loss, shall exceed half the amount insured."

The clause was introduced after the long litigation in the case of *Peele* v. *Suffolk Insurance Company*, 7 Pick. 254, and was intended, without doubt, to provide by agreement for the construction which the underwriters contended to be right, in those cases relating to the Argonaut.   They intended, that the value in the policy should be the rule upon which the calculation should be made ; and they intended, that one third new for old should be deducted, and that if the loss exceeded one half of the value in the policy, or (as it is expressed) of the amount insured, then it should be a constructive total loss. Now the amount insured on the ship, by this policy, is $ 8000 ; and it is said expressly, that *that* sum includes the premium. How then can we undertake to exclude it by construction, and say that $ 7440 is the amount of the sum insured ?   The

premium made a part of the value insured ; it was an insurable interest, as much as was the ship itself ; and the calculation must be made accordingly.

But it is contended, that in calculating whether or not the loss of 5 per cent has happened on the ship the premium is to be excluded, and that the same rule should be adopted in ascertaining the loss of 50 per cent as of 5 per cent. *Brooks* v. *Oriental Insurance Company*, 7 Pick. 259.

The rule excluding the premium from the aggregate value, in the calculation of the per centage of damage to articles enumerated in the memorandum clause, was adopted from what was understood by the Court to be the prevailing usage in adjustments of partial losses under that clause. Independently of the usage, the premium might well be considered as included in the aggregate value. 1 Phillips on Ins. 311 ; 2 Phillips on Ins. 213.

But the meaning of the clause in the policy concerning the right to abandon on account of damage exceeding 50 per cent of the amount insured, is too plain for construction or explanation. The premium is expressly made to be part of the amount insured, and the damage to be paid must exceed half that amount, calculating the same " as under an adjustment of a partial loss ;" that is, by deducting one third new for old, from the expenses of the repairs.

That deduction was certainly the ancient mode adopted in England. Weskett, *tit. Average*, § 15, speaks of it as a general custom. The rule has however been modified in that country. It is not applied there, when the damage happens upon the first voyage ; upon the ground, that the reason of the rule in that case fails, for that a new and good vessel cannot be made better by new repairs, than she is presumed to have been before she received the damage. *Fenwick* v. *Robinson*, 3 Carr. & Payne, 323. We have held to the old rule, however, in *Sewall* v. *United States Ins. Co.* 11 Pick. 96, which was a policy upon a new ship. And such is the rule in New York *Dunham* v. *Commercial Ins. Co.* 11 Johns. R. 315. *Vid.* 3 Kent's Comm. (3d ed.) 339, note. And it seems to us, that the rule should have a general application to all vessels, so that on the whole there would be a just, practical result.

It has been contended for the plaintiffs, that the marine nterest which was necessarily paid, should be allowed towards the partial loss without any deduction of one third. But it seems to us, that where there was a necessity to raise money at marine interest, it must be considered as a measure which increased the expenses incurred. The repairs cost just so much more on that account; and from the whole amount of their cost, the deduction of one third should be made.

And upon the same principle it is, that the commissions which are paid, and the exchange on which funds are raised, are to be taken into the account and borne by the party liable to make the repairs. *Vid.* Benecke on Ins. (Phillips's ed.) 169 ; *Humphrey* v. *Union Ins. Co.* 2 Phillips on Insurance, 245.

And it was argued for the plaintiffs, that in calculating the fifty per cent the vessel's proportion of all the items of general average, was to be included, and if not all, certainly the expense of getting the vessel into Malaga and of the first survey and expenses incident thereto, and of unloading the cargo, and the hire of the vessel into which it was put, and of pilotage and lighterage, boat hire, wages, provisions, and consul's fees.

Now it is not contended but that all those items (excepting the first, perhaps, viz. the expenses of getting the vessel from where she received the damage to Malaga) are proper charges to be brought into general average ; and the question is, if any of them should be taken to make up the particular average.

It was said, that the expense of getting the vessel from the place where she was injured to Malaga, including especially the wages of eight extra seamen at Roquetas, came within *Sewall* v. *United States Ins. Co.* 11 Pick. 92. In the case cited, it was stated by the Chief Justice, that the expense of raising a ship which had sunk, was to be a direct charge to the owner, and that as the vessel and cargo happened to be so situated that they could be saved together, the expense was very properly and equitably apportioned upon their relative owners. That was said not to be technically a general average, but in nature of a general average. I instructed the jury in regard to that point as the plaintiffs' counsel requested. But speaking for myself, upon more reflection, I am disposed to think, that the employment of the eight seamen to assist in pumping and navi-

gating the vessel from the place where she was injured to Malaga, should have been considered to have been strictly a charge to the general average. I cannot now see any reason for making a difference between the expense of those extra seamen, and the wages of the crew and various other expenses incurred for the common good. *Vid. Potter* v. *Ocean Ins. Co.* before *Story* J., Circuit Court of U. S. Oct. T. 1837; Stevens & Benecke (Phillips's ed.) 76; *The Copenhagen,* 1 Rob. Adm. R. 289; *Birkley* v. *Presgrave,* 1 East, 227; *Padelford* v. *Boardman,* 4 Mass. R. 548. But, as was before intimated, the plaintiffs have no reason to complain of the charge upon that point.

And in regard to the other items which are technically general average charges, it is entirely clear, that they are not to be taken, to make up the particular average account. They were incurred to place the ship &c. in a condition to be surveyed and examined. Those expenses must be paid, whether the repairs should be made or not; and they have no tendency to show how much it will cost the owner of the ship to repair it. The *particular* average loss (as is well known) is to be borne by the owner of the ship; the *general,* is to be sustained by the ship, cargo and freight. Now by a clause in this policy it is provided, that the company shall not be answerable for wages or provisions, except in general average. *Padelford* v. *Boardman,* 4 Mass. R. 548. And we think it to be very clear, that the parties did not intend to blend the particular and the general average, and to allow any item of the latter to be added to the former. They meant, no doubt, very accurately to define, if not to narrow, the right of the insured to abandon for damage as a technical total loss; a right founded on an arbitrary rule, which we think an entire departure from the great principle of indemnity upon which the contract of insurance should rest.

The Court are of opinion, that the plaintiffs have no reason to complain of the instruction upon this point.

The plaintiffs contended, that if the voyage was broken up by the injury to the vessel, it was a good cause of abandonment. If that should be admitted, there were two answers: 1. That there was no evidence that the voyage was destroyed and 2. That there was no abandonment made in season. As

ιο the first, the cargo consisted of wines and other articles which were not perishable ; and the ship was repaired in about ten days, so well as to make a voyage across the Atlantic.

The report finds, that, during the trial, it was agreed by the parties that the jury might find for a total or a partial loss generally, and that the Court should appoint assessors ; and it was suggested by the plaintiffs' counsel, after the jury had retired, that the jury had not been informed of the fact last stated, and that, if they were instructed upon that point, it might save them the labor of assessing the damages.   This seeming to be very reasonable and expedient, I then proposed to give them the additional instructions mentioned in the report, and read the same in open court to the counsel of the parties, who were present ; and to part of those instructions, the counsel for the plaintiffs objected then and now.   The jury were desired to find the items of damage which in their opinion exceeded one half of the amount insured, if such should be their opinion.   And we do not think there was any thing wrong or rregular in that instruction.   In civil proceedings, the law and the fact should be kept as distinct as possible, to the end, that the law may be practically what it professes to be, a uniform rule of action.   Such inquiries are very frequently made ; and the answers of the jury, often prevent the necessity of further expense and litigation.

The verdict disposed of the question of due diligence, which the Court thought should have been used to ascertain the fact, whether, or not, funds could have been obtained.

The only other question remaining is, whether the juror who was returned by the sheriff as a talesman, could be considered as competent, inasmuch as the sheriff was one of the stockholders of the insurance company, the defendants.   And without taking into consideration, whether any importance ought to have been given to that circumstance, we think that the knowledge which the junior counsel for the plaintiffs had of the fact, soon after the trial commenced (which knowledge was admitted), and, also, his proceeding with the trial for some time afterwards, without objection, should be considered as a waiver of the objection raised by the senior counsel to the competency of the juror.

Upon the whole matter we are all of opinion, that the judgment should be rendered for the plaintiffs, for a partial loss. The Court will appoint an assessor to ascertain the damage, unless the parties shall agree upon one, in which case the Court will adopt their nomination.