NOTE.—See Wood *vs.* Stark, p. 9.

---

### THE "PHILOMELA."

The expenses of entering and quitting a port of distress, to refit, and of discharging and reloading cargo there, and all other necessary expenses for the benefit of all concerned, are to be contributed for as a general average, without regard to the nature of the damage which made it necessary to put in for repair.

The loss sustained by the sale of goods for the purpose of raising funds to defray the expenses of repairing the ship, is not to be included in a general average contribution, but must be borne by the ship owner alone.

The wages and provisions of the master and crew from the time of bearing up for port, until the ship was again ready for sea, included in general average.

### AWARD.

WHEREAS, the American bark "Philomela," on a voyage from New York to Honolulu, Hawaiian Islands, with a cargo of flour, bread, coal, and other articles of merchandise, met with a severe disaster at sea, and was obliged to put into Monte Video, Paraguay, for repairs to enable her to proceed on her voyage, whereby sundry expenses and charges were incurred, and sacrifices made; and whereas, on the arrival of the said bark at Honolulu a dispute arose be-

tween the master and freighters of said bark as to whether the case was one of general average, and if so, what amount of the losses should be contributed for by all concerned; and whereas the whole matter in dispute was referred to the undersigned by an agreement executed by all parties on the 23d day of March, 1853, for a final settlement and adjustment of the general average losses, if any, according to the law and usages of this kingdom.

Therefore, Be it known, to all whom it may concern, that having accepted and taken upon me the said reference, and having heard what hath been alleged by and on behalf of all parties, and examined such witnesses on oath as were necessary and proper to give evidence touching and concerning the matters referred to me, and each party having produced before me such vouchers, papers and writings relating to the matters in difference as were necessary to enable me fully to investigate the same, I do hereby make the following decision, award and adjustment, conformably to the law and usages of this kingdom.

I am of opinion that the injury which compelled the vessel to put into port, was a mere peril of the sea, arising from the violence of the weather, without any sacrifice for the benefit of all concerned, and consequently the expenses of repairing the vessel are not a general average loss, but must fall solely upon the owners of the ship, for whose benefit alone they were incurred. But though the repairs of the ship are a particular average loss, to be borne by the ship alone, yet it is a well settled rule of law, that the expenses of entering and quitting a port of distress, to refit, and of discharging and reloading cargo there, and all other necessary expenses for the benefit of all concerned are to be contributed for as a general average, without regard to the nature of the damage which made it necessary to put in for repair. This principle is carried to greater lengths in the United States than in England, but in both countries and on the Continent it is well established. The rule applicable to such cases in the United States has been adopted here in the main, and it is stated by Mr. Justice Story to be definitely settled "that whatever be the nature of the injury, whether arising from a voluntary sacrifice, or a mere peril of the sea, the wages and provisions of the crew from the time of putting away for the port, the expense of loading and unloading, and every other expense necessarily incurred during the detention, for the benefit of all concerned, are to come under general average." Abbott on Shipping, 6th Am. ed., 600, 701; Arnould on Insurance, 914, Note.

It appears that the master sold a portion of the cargo to raise part of the money necessary to defray the expenses of putting into port, making repairs, unloading, reloading, quitting port, etc.; and being satisfied from the evidence submitted to me that he exhausted all other means of raising money, without success, I am of the opinion that he was justified in making such sale, and that the loss sustained by the sale, so far as it was for the *general benefit*, is the subject of a general average contribution. (3 Kent's Comm., 242. 3 Mason's R., 255. Jiles *vs.* Eagle Ins. Co. and Metcalf, 140. 2 Arnould on Ins., 891, 892.)

But it is a new and somewhat nice question to determine, whether the whole of the loss sustained by the sale of the goods should be

contributed for in general average, or only such a portion of the loss as was necessary to defray the general average expenses. In other words, is the loss arising from the sale of goods to raise funds to meet the expenses of repairing the ship, which is a particular average loss, to be made good by the shipowner alone, or to be contributed for by all concerned. It is clear that the loss resulting from a sale of so much of the cargo as was necessary to defray the expenses of entering port, unloading, reloading, and all other expenses clearly within the range of general average losses, should be contributed for by all, and the same may be said where the goods are sold to raise the means of getting sails, masts, cables, &c., which had been sacrificed for the general benefit; but where, as in this case, a portion of the goods were sold to repair a particular average loss, it becomes a question of no little doubt. It is said by the counsel for the shipowner, that it is as much for the general benefit that the ship should be repaired, as that she should enter port and quit it again, and that consequently the loss arising from a sale of the goods to defray the expenses of the former, establishes as good a claim to general average as the loss from a sale to meet the latter. That the object is to put the ship in a condition to take on the cargo, and the loss from the sale is a sacrifice for the good of all concerned. It is resorted to not for the benefit of the ship alone, but for the joint benefit of both ship and cargo, and should be treated just as though the goods had been jettisoned. But to my mind the distinction between the loss on goods sold to meet general average expenses, and the loss on those sold to defray particular average expenses seems obvious. The expense of raising funds should fall on those liable to make reimbursement, so far as the funds are raised on their account, but no farther. The expense of the repairs themselves not being the subject of general average contribution, it seems clear to me that the loss on goods sold to defray that expense should follow the principal, and should not be included under the head of general average items.

The owner of the ship is bound to keep his vessel in a navigable state, and consequently to repair at his own cost all damages accidentally done to her in the course of her voyage. And if the captain being unable to raise the means of refitting her, is compelled to force a loan from the owners of the goods by a sale of their property, the ship owner alone should make good the loss so occasioned. The proportion of the loss arising from the sale chargeable to repairs, is just so much added to the cost of those repairs, and should be borne by the party liable to make them. In other words the loss sustained by raising funds to make the repairs, whether it be by a sale of goods, exchange, or on a bottomry bond, is only a part of the expense of those repairs. The rule of the English authorities on this subject, seems to me to be the sound one, namely, 1. "That where goods are sold by the captain in order to raise funds for repairing particular average losses, or for defraying the ordinary expenses of navigation, the loss arising from their sale must be made good by the ship owner alone, who must in such case pay the merchant the price which the goods would have fetched at their place of destination, deducting therefrom the freight which would have been due for their conveyance. 2. Where on the other hand, they are sold for the purpose of defraying expenses or repairing losses, which are themselves of the nature

of general average, the loss arising from their sale gives a claim to a general average contribution." (2 Arnould on Insurance, 891, 893, 906, 909.)

It is claimed that the wages and provisions of the crew from the time of bearing up for port until she was ready for sea again, should be contributed for in general average; and to this claim it is objected that if the wages and provisions are a proper subject for general average contribution, they cannot be allowed during the detention of the vessel while undergoing repairs.

It has been distinctly settled in England that the expense of wages and provisions during a delay, and going out of the course of the voyage to refit, are not to be contributed for in general average; but the American doctrine, which, on this point, has been fully adopted here, classes such expenses among general average losses, and settles the question conclusively in favor of the claim. (Abbott on Shipping, 498, Note; 2 Phillips on Ins., 119, 120; Padelford *vs.* Boardman, 4 Mass., 548; Potter *vs.* Ocean Ins. Co., 3 Sumner, 27; 2 Arnould on Ins., 911, Note 1; Peters *vs.* Warren Ins. Co., 3 Sumner, 400.)

There is also a claim filed for the captain's wages and board, which is objected to, on the ground that, even allowing the wages and provisions of the crew to be a proper subject of contribution in general average, yet the captain not being one of the crew, his wages and provisions are not within the rule. Upon what principle the wages and board of the captain while the vessel is undergoing repairs are to be excluded from general average, while the wages and provisions of the crew are allowed, it is not easy for me to perceive. The services of the captain are of the highest importance to all concerned, and upon principle I think they should be contributed for as much as the wages and provisions of the crew. In the case of the American bark Globe, settled in the court of Oahu in 1844, the charge for services of the captain was allowed as an item of general average, and it was stated as one of the rules governing that court in adjusting cases of general average, that when a vessel puts into port in distress, the master's board while the vessel is undergoing repairs should be the subject of general average. In the case of Potter *vs.* Ocean Ins. Co., 3 Sumner, 27, the wages and provisions of the captain were allowed in general average, and also in the case of Bixby *vs.* Franklin Ins. Co., 3 Sumner, 46, in Note; and I know of no American decision to the contrary.

N

## AMOUNT OF LOSSES TO BE CONTRIBUTED FOR IN GENERAL AVERAGE.

| | | |
|---|---|---:|
| To cash paid for Stamps at the Custom House to open and close Register, | $ | 24 00 |
| Escribano's fees, do. do. do., | | 16 00 |
| Tonnage and Guard money, | | 226 02 |
| Hospital money, | | 8 00 |
| Bill of Health, | | 5 03¼ |
| Pilotage in, removing twice, and out, | | 22 04 |
| Surveyor's bill, (see vouchers from 9 to 13) | | 76 06½ |
| James Brown's bill, coopering water and other casks injured in discharging, (voucher No. 14,) | | 9 02 |
| Hector Garcia's bill for lighterage, (voucher No. 16) | | 65 03 |
| Jose de la Harty's bill for storage and labor, (voucher No. 17) | | 81 01½ |
| Custom House, storage on cargo, &c., reshipped, (voucher No. 18) | | 105 04 |
| Unloading coal, bread and other cargo, included in voucher No. 20, | | 235 02 |
| United States Consul's bill, (voucher No. 26,) | | 181 06½ |
| Boat hire in taking off Surveyors, &c., | | 9 |
| Commissions paid Southgate & Co. for disbursements on the above items, at 5 per cent., | | 53 04½ |

| | | |
|---|---|---:|
| | | 1119 7¼ |
| Equal to Spanish dollars, | | 933 25 |

Wages from October 20th, the time of bearing up for Monte Video, until the time of departure, December 27th, 2 months 7 days,

| | | | | | | | |
|---|---|---|---|---|---|---:|---:|
| Captain, at $75 per month, | | | | | | 167 50 | |
| Mate, | 35 | | | | | 78 17 | |
| 2d mate, W. C. Cowles, | 22, | 26 days, | | | | 19 06 | |
| Steward, J. Sampson, | 20, | 12 " | discharged, | | | 8 00 | |
| Seaman, R. Robertson, | 11, | 11 " | " | | | 4 04 | |
| "   M. Boldas, | 11, | 11 " | " | | | 4 04 | |
| "   E. Baker, | 11, | 11 " | " | | | 4 04 | |
| "   John Moody, | 11, | 2 months 7 days, | | | | 24 57 | |
| "   W. Shute, | 6, | 2 " | " | | | 13 40 | 321 82 |

The following men were shipped in Monte Video:

| | | | | | | |
|---|---|---|---|---|---:|---:|
| 2d Mate, J. Grady, | $20, 1 month, | | | | 20 00 | |
| Seaman, J. Smith, | 14, 1 month, | | | | 14 00 | |
| "   C. Robinson, | 14, 14 days, | | | | 6 53 | |
| "   A. Perry, | 14,   " | | | | 6 53 | |
| "   A. Williams, | 15,   " | | | | 7 00 | |
| Steward, G. Green, | 20,   " | | | | 9 33 | |
| Seaman, J. Brown, | 14, 18 " | | | | 8 40 | |
| "   J. Morgan, | 14, 19 " | | | | 8 83 | |
| "   E. Maulder, | 14, 12 " | | | | 5 60 | |
| "   J. Watson, | 14, 13 " | | | | 6 07 | 92 29 |

### Provisions.

| | | |
|---|---:|---:|
| Captain's board as per voucher No. 15, 50 days, | 75 00 | |
| Mate's board, 2 months and 7 days, at 50c. | 33 50 | |
| Board of Seamen for 383 days, at 25c. | 95 75 | 204 25 |

### Loss on Goods sold.

| | | |
|---|---:|---:|
| 359 tons coal, worth in Honolulu $25 per ton, less freight, no duties paid, | $3590 53 | |
| Do. do. do. sold in Monte Video for | 1385 38 | 2205 15 |
| 30 casks flour, 111¾ bbls., net value in Honolulu, less freight and duties, | 1990 82 | |
| Do. sold in Monte Video for, | 633 60 | 1357 22 |

| | | |
|---|---|---:|
| Amount carried forward, | | 3562 37 |

Amount brought forward,    -    -    3562 37
7779 lbs. bread belonging to H. T. Fitch, net value in Honolulu,
   less freight, &c.,   -   -   -   -   -   -   583 45
6677 lbs. bread, belonging to A. G. Benson, net value in
   Honolulu, less freight,    -    -    -    -    -    500 80
                                              1084 25
Do. sold in Monte Video for    -    -    -    -    361 13    723 12
6750 gals. casks, containing flour and bread, net value in Hono-
   lulu, less duties, no freight paid,    -    -    -    529 88
Do. sold in Monte Video with bread and flour and realized    00 00    529 88

Total,    -    -    -    -    -    -    -    -    -    $4815 37
Proportion of loss by sale of goods to be borne by general average,    $3140 50
Costs of adjusting this average and 4 copies,    -    -    -    -    150 00

Total,    -    -    -    -    -    -    -    -    -    -    -    4842 11

## VALUE OF ARTICLES TO CONTRIBUTE.

686 19-20 tons coal, belonging to Howland & Aspinwall, net value in
   Honolulu,    -    -    -    -    -    -    -    -    -    -    6871
114 casks bread, belonging to A. G. Benson, containing 40,118 lbs. net
   value in Honolulu,    -    -    -    -    -    -    -    2961 80
124 casks bread, consigned to H. T. Fitch, containing 56,217 lbs., net
   value in Honolulu,    -    -    -    -    -    -    -    4216 49
30 casks flour, consigned to H. T. Fitch, containing 111¼ bbls., net value
   in Honolulu,    -    -    -    -    -    -    -    -    1990 82
27,167 gals. casks, containing H. T. Fitch's bread and flour, net value in
   Honolulu,    -    -    -    -    -    -    -    -    -    2132 61
Goods of T. K. Park, net value in Honolulu,    -    -    -    -    -    1928 40
Goods of S. P. Ford, net value in Honolulu,    -    -    -    -    -    281 50
Goods of S. C. Damon, net value in Honolulu,    -    -    -    -    -    250 00
Goods of A. J. Cartwright, net value in Honolulu,    -    -    -    -    30 00
Goods of A. B. Howe, net value in Honolulu,    -    -    -    -    -    130 00
Value of the ship, deducting wear and tear, &c.,    -    -    -    -    -    18000 00
Clear freight, deducting wages,    -    -    -    -    -    -    -    5649 72

                                             $44,442 34
Total of general average losses,    -    -    -    -    -    -    -    4842 11
Total of contributory value,    -    -    -    -    -    -    -    -    44,442 34

## THEREFORE,

686 19-20 tons of coals belonging to Howland and Aspinwall, contributes,    748 60
114 casks bread belonging to A. G. Benson,    .    .    .    .    .    .    322 70
124 casks bread consigned to H. T. Fitch,    .    .    .    .    .    .    459 33
30 casks flour    "    "    .    .    .    .    .    .    .    .    216 75
27,167 gals. casks    "    "    .    .    .    .    .    .    .    .    232 40
Goods belonging to T. K. Park,    .    .    .    .    .    .    .    .    210 20
   "       "    S. P. Ford,    .    .    .    .    .    .    .    30 70
   "       "    S. C. Damon,    .    .    .    .    .    .    .    27 25
   "       "    A. J. Cartwright,    .    .    .    .    .    .    3 25
   "       "    A. B. Howe,    .    .    .    .    .    .    .    14 17
The ship contributes    .    .    .    .    .    .    .    .    .    .    1961 60
Clear freight,    .    .    .    .    .    .    .    .    .    .    .    615 76

                                          $4842 11

## WILLIAM L. LEE.

NOTE.—The above award was published in the *Polynesian* of May 21, 1853.