Kent, Ch. J.
The general question in this case is, whether the plaintiffs are entitled to recover for a total, or for a partial loss of freight.
It is now too late to deny or disregard the rule, that freight pro rata itineris is due, when a ship, by reason of perils, goes into a port short of her destination, and is unable to prosecute the voyage, and the goods are there received by the owner. An implied assumpsit to pay for the labour performed, and service rendered, is raised by the acceptance of the goods at such intermediate port.— The case of Luke v. Lyde, is said to have adopted this *325 rule from the marine law; but that case was founded expressly upon the decision of Lutwidge and How v. Grey, determined in the house of lords, in 1733. (Abbot, 249. 2 Burr. 881.) In the case before the lords, the master was allowed his full freight for that part of the: cargo which he offered to carry on in another ship, and his ratable freight for that part of the cargo which he fvoidd not undertake to carry on, and which the owner had taken into his possession. The rule appears to have been too long and authoritatively settled in the English courts to be now shaken; and in Mulloy v. Backer, (5 East, 316.) the decision in Juice v. Lyde seemed to bé' considered, however reluctantly, as a binding authority. After such a sanction of the rule, and the acknowledgment it has received in this court, (2 Caines, 21.1 Johnson, 27.) we are not now at liberty to draw it in question. The plaintiffs were, therefore, entitled, by the acceptance of the cargo at Kingston, to a pro rata freight; and so far' as freight was earned, the same was not lost by the perils of the sea; for the insurance was, that the plaintiff should not be prevented, by any peril insured against, from having a right to recover freight. But the great difficulty is to ascertain, by some general and sound .ruler the amount of the freight earned. This difficulty would, perhaps, have been sufficient to have excluded altogether the doctrine of pro rata freight, if it was now for the first time to be considered. The intermediate port, at which the goods are received, may, indeed, prove more beneficial to the shipper than the original port of destination; but it may, also, prove most disadvantageous,- and destroy the profit and value of the voyage. The shipper may find with facility other means to carry on the cargo, and without any addition to the original price; or he may be absolutely incapable of proceeding, or not be able to proceed without great delay and expense. The court, however, cannot enter into these uncertain calcu-* *326 lations, and until some better rule of apportionment caii be found, we must, for the present, adopt that which prevailed in Luke v. Lyde. This was to calculate how much of the voyage had been performed, when the disaster •happened. In the case of the Marine Insurance Company v. Lenox, decided in the court for the correction of errors,in 1801, the rule adopted was to ascertain how much of the voyage had been performed,'not when-the ship first encountered the peril, and was interrupted in' her course,but when the' goods had arrived at the intermediate port* because that is the extent of the voyage performed, as it respects the interest ofthe shipper; This decision arose on a question between the owner and the insurer on the ship, after an abandonment and acceptance, but the principle applies equally to a case between the owner of the' vessel and the shipper of goods. The rule appears to be' more just than that in Luke v. Lyde, but we cannot adopt it in the present case, because we have no data given by which wé might ascertain the difference of a voyage, as it respected the port of destination, between Kingston and the place where tlie vessel was forced out of her course. The geographical distance might, in this case, be a very incorrect rule, for the course of the winds and currents, and the season of the year, will make a very great variation in the duration and expense of voyages,-, over an equal extent ofspace.
We have accordingly, in, the present case, ascertained the pro rata freight earned, by the .rule adopted in Luke v. Lyde, and by that r.ule a moiety of the freight has not been lost, and the plaintiffs are only entitled to recover for a partial loss.
In settling the amount of that loss, according to the Stipulation in the case, we ought to make the largest deduction in favor of the defendants which the facts will Warrant, as thé plaintiff’s have' chosen to resort to the insurer, before they have liquidated the precise amount, of ' *327 their demand against the shipper, and have left us in uncertainty as to what may be the actual extent of such re-recovery. We may, therefore, presume that it will be equal to the highest calculation which the case will warrant, as to the different lengths of the voyage. We are then to take 25 days for the ordinary voyage from New Orleans to the Cope, and 20 days for the ordinary voyage from the Cape to St. Thomas, where the shipper had a right to go by his charter party. The plaintiffs, then, will appear to have performed 24-45 parts of the full voyage. A sum in the proportion that 24 bears to 45, is, therefore, to be' deducted from the amount of the recovery for a total loss, and the verdict is to stand for the residue.
Thompson, J. declared himself of the same opinion.
Spencer, J. not having heard the argument in the cause, gave no opinion.
Judgment for the plaintiffs.