The opinion of
Bay, J.,
was, in substance, conformable to the opinion Brevard, J., had prepared, which was as follows. The question submitted by this special verdict is, whether, under the circumstances of the case, the defendants are legally responsible for the whole freight stipulated in the contract, to be paid for the full voyage, or only for a rateable proportion of the freight for the part of the voyage ■which was performed. It does not appear whether the verdict was given in an action of covenant, on the charter party, or in an action of assumpsit for the freight. According to the case of Cook v. Jennings, 7 D. and E. 381, if the action was covenant the plaintiffs are not entitled to recover any thing, although part of the voyiage was performed, because, by the express terms of the charter party, the stipulated freight was to be paid on the delivery of the cargo at the port of delivery ; and the cargo was not delivered there. But I shall take it for granted, that the action was founded on an implied assumpsit, for the freight, arid that there is no objection to the form of action. The general rule of the marine law, applicable to this case, is, that unless there has been some fault in the owners, or master of the ship, the freighters must pay the freight; either the whole freight for the stipulated voyage, or for the proportion of the voyage performed, according to circumstances. 2 Burr. 882. The master is excused for non-performance, by the act of God, by public enemies, or perils of the sea. The capture and detention of the ship at Villaneuva, cannot be imputed to the fault of the master, or owners. The disabled condition of the vessel necessitated the deviation into the port of Cadiz, in order to preserve the vessel and cargo, and to repair. The rule of law is, that in case a ship is disabled on the voyage, without the fault of the master, and is obliged to go into a port to .refit, short of, or other than,,the port of delivery, it shall be the duty of the master to repair the ship within a reasonable time, and offer to proceed on the voyage ; or else to hire another vessel for that purpose. It may be inferred from the verdict in this case, that the ship was repaired, and was ready to receive the cargo at Cadiz, within a reasonable time, • although this does not certainly appear. It was the choice of the supercargo to decline the further prosecution of the voyage. According to the doctrine laid down by Lord Mansfield, in the case'of Luke and another v. Lyde, 2 Burr., the plaintiffs became entitled to the whole freight for the full voyage, by refusal of the supercargo tp relade the goods, in order to the completion of the *236 v°ya£e ’ ,in^ess the reasons which operated on him. to decline re-lading the goods, are sufficient to excuse the defendants, and remove the imputation of fault on the part of the supercargo. The circumstances stated in the verdict, as furnishing the reasons of the supercargo for refusing to relade the cargo, seem to be conceded aS true‘ ^ ^acls were not so> the verdict ought to have negatived them. Taking it then for granted, or as proved, that the port of delivery was closed against all vessels from Cadiz; and that British cruisers, of Malaga, had orders to take vessels sailing from the port of Cadiz, it seems altogether unreasonable to impute as a fault in the supercargo, what any prudent careful man ought to have done under similar circumstances. It would have been rashness to have ventured to sail to Malaga at the extreme hazard of capture ; but if the ship had escaped capture, what reasonable prospect was there of being permitted to enter the port of delivery, which was shut, from a dread of contagious distempers, against all vessels coming from Cadiz ? It seems to me, therefore, that the completion of the contract was prevented by the intervention of imperious circumstances, not within the power of the parties to control, or avoid, and which could not have been foreseen, and were not in the contemplation of the contracting parties at the time of the formation of the contract. It does not appear to me that the freight could have been earned, if the supercargo had re-laded the goods, and, therefore, there cannot be any justice or equity in the plaintiff’s claim to the whole freight.
Where a ship was hired to go beyond sea, to fetch home a cargo, for which a certain freight was to be paid, nothing was to be paid for the voyage outward, and it came home in ballast, the factor of the merchant having no cargo to put on board, the Court of Chancery decreed payment of the freight. 2 Vern. 212. In this case it appeared to be the fault of the hirer, that no cargo was ready, or provided, to be put on board. This must have been the ground of his responsibility. If a ship be hired to go to a foreign port, and the merchant covenants to furnish a lading there, and a prohibition of the government of that country hinders the exportation of the intended articles, the prohibition neither dissolves the contract, nor absolutely excuses a performance. Therefore, the master ought, in such case, to endeavor to obtain another cargo, if possible, to entitle himself to the whole freight. Abbot, 340. In this case neither-party is in fault; but one of two innocent persons must bear the loss, in case another cargo cannot be obtained; or rather both must share the loss; and it seems most reasonable, that the loss should *237 be borne by each, according to their respective interests, and that the .merchant should not be liable^ for the freight, for the return voyage. If part of the voyage be performed before the prevention occurs, the master will be entitled to freight pro rata itineris. In the present case it does not clearly appear whether the master endeavored to procure another cargo, or.not; and whether any cargo,.which he might have procured, would have been suffered to pass, unmolested, by the British cruisers. But whether the facts were so, or hot, it does not appear to me that the plaintiffs are entitled to any further compensation for freight than what they have received ; and, therefore, I think judgment ought to be for the defendants.
Note. Freight, pro rata itineris, is due when a ships by reason of perils, goes into port short of her destination, and is insui able to prosecute the voyage, and the goods are there received by the owner. See 2 Johns. 325. As to abandonment of goods deteriorated where freight insured. See 3 Johns. 321, 330. Abbot, 243. Whether any freight is due, if the.ship be lost. See 3 Johns. 340.