Scott, J.
The judgment sought to be reversed by this proeeed *286 ing was rendered in an action of assumpsit brought on a promissory note for $241.20, made by Samuel T. Tyler, dated Cincinnati, June 22,1837, payable, not at any specified place, ninety days after date, to the order of the defendant, Charles Fox, and indorsed by him. Suit was brought originally in the Commercial Court of Cincinnati ; and, on appeal from its judgment, the cause was tried in the district court of Hamilton county, without the intervention of a jury, and judgment was rendered for the defendant.
At the trial in the district court, the plaintiff offered in evidence the note above referred to, and the certificate of protest attached; and it was admitted that the notary had duly demanded payment of the note, and given proper notice to charge the defendant, as indorser, on the 20th day of September, 1837, the day on which the note became due, unless it was entitled to days of grace. And thereupon the plaintiff rested.
The defendant then called two witnesses, whose testimony, as set out in the bill of exceptions, is as follows:
*“V. Worthingtoii testified, that he had been a resident of Cincinnati since A. d. 1824; that after 1830, when he first became acquainted with the business of the city, all commercial paper was entitled to days of grace, according to the usage in Cincinnati, without distinction between paper payable in banks or elsewhere; that it was then usual in Cincinnati to allow three days of grace on promissory notes not payable in banks, as well as upon notes payable at banks; that the publication of the decision in the 7th volume of the Ohio Reports was the subject of considerable comment, but whether it made any difference in the usage as to protesting notes, he could not say so well as Mr. Avery could, who was present.”
“ John L. Avery testified that he had long been a notary public in the city of Cincinnati; that he was a notary prior to 1837; that before the publication of the decision, reported in the 7th volume of the Ohio Reports, it was the practice of notaries to protest notes not payable in banks, as well as notes made payable in banks, on the third day of grace; that, after the publication of that decision, the practice, as well as he could recollect, continued unchanged, and all notes were entitled to days, of grace; and that his own practice, in the absence of special instructions, was to protest nil notes on the third day of grace; but that some persons, he recollected, after the publication of the decision referred to, directed *287 him to protest notes not payable in banks, both on the days of their maturity without grace, and on the third day of grace.”
On cross-examination, this witness stated that his business as a notary had been principally protesting mercantile paper for banks; and that his attention had not been called to the subject of his testimony until just as he was sworn as a witness.
Upon this testimony which was all that was adduced, the court found that the demand for payment had not been made on the proper day, but should have been made on the third day of grace.
The plaintiff then moved the court for a new trial, because the finding was against the law and the evidence, and because of *newly-discovered evidence, and because he was taken by surprise by the nature of the testimony adduced by the defendant; and filed in support of his motion, his own affidavit, to the effect, that he was engaged in mercantile business in Cincinnati in the years 1836, 1837, and 1838, and knew the universal custom in those years to have been, to make demand of payment, and give notice of the dishonor of notes not payable in banks, on the days of their maturity, without allowing days of grace; that he had no reason to suspect that an attempt would be made by the defendant to prove a usage different from the true one, at the trial in the district court, as no such attempt was made in the court below; that since the trial, he had endeavored to induce John D. Avery, who had been examined as a witness, to refer to his notarial register for the years 1836, 1837, and 1838, to ascertain the facts as to the protest of notes not payable in banks, without success ; and that he, himself, had examined the registers of A. J. Wheeler, who was a notary for the years referred to, and found many notes protested on the days of their maturity, without grace, and not one note, not payable in bank, protested on the day of its maturity, allowing days of grace.
He also filed, in support of his motion, the affidavits of Isaac G-. Burnet, Peter Outcalt, and Wilson N. Brown, showing that, in the years 1836, 1837, and 1838, it was the universal custom in Cincinnati to protest notes not payable in banks, on the days of their maturity, without grace. But the court overruled the motion of the plaintiff, and entered judgment in favor of the defendant.
The plaintiff excepted to the finding of the court in the premises, and to the overruling of his motion for a new trial. The assign *288 ment of errors in this court calls in question the action of the district court to which exception was thus taken.
Motions for a new trial on the ground of surprise, or of newly-discovered evidence, are addressed to the sound discretion of the court which tried the cause, and, in general, the exercise of that discretion will not, at common law, be reviewed upon error.
Independent of any statutory provision on the subject, the ruléis the same where the motion is based on the insufficiency of the ^evidence to support the verdict of the jury, or the finding of the court when the intervention of a jury is waived. House v. Elliott, 6 Ohio St. 497.
By the act of March 12,1845, “ to regulate the judicial coux-ts. and the practice thereof,” parties were expressly permitted to except to the opinion of the court “ in all cases of motion for a new trial by reason that the verdict may be supposed to be against law or evidence, so that such ease may be removed by writ of error.” This statute, it is true, was repealed by our present code, and hencer in the case just cited, which arose under the code, this court denied-the right to review the refusal of the district court to grant a new trial because the verdict was against the evidence.
But the case now under review was commenced before the adoption of the code, and its provisions do not apply to cases pending when it took effect. They were to be conducted to final judgment or decree in all respects as if it had not been adopted. Sec. 602. The plaintiff had, therefore, a right to except to the overruling of his motion for a new trial, that being a part of the proceedings in the cause prior to final judgment.
Of this there could be no doubt, under the statute of 1845, if the code had not been adopted. And as the code does not affect the rights of parties in cases pending when it took effect, but merely changes the form of the proceedings to reverse final judgments in such cases, we think the finding of the district court, both as to questions of fact and of law, are properly subject to review in this case.
The main question presented is this : As the ,law stood in Ohio, in 1837, was the note in question entitled to days of grace ? If it-was, the demand and notice shown in this case were premature, and the indoi’ser is not liable; but if otherwise, the demand and notice of non-payment were regular, and the indorser is liable.
The statute in force at that time, defining negotiable paper, and *289 prescribing the rights and obligations of the parties thereto, was the' act of February 25,1820 (29 Ohio L. 217), which was entirely silent, as to days of grace. These were not expressly allowed by statute* until the act of March 13,1839, which gave *three days of grace to all negotiable instruments. In 1835, the question arising-in this case came before the Supreme Court of this state, in the case-of Sharp v. Ward, which was reserved, as appears from the report, in order “ to settle and publish a rule of mercantile law, respecting-days of grace upon negotiable notes payable at no particular place.” 7 Ohio, 223.
In that case it was held that some descriptions of negotiable-paper, such as notes payable at bank, and commercial bills of exchange, were, by well-established usage, entitled to days of grace.
But the general usage, and therefore the rule, was held to be-otherwise in this state, in regard to “mere ordinary notes of hand made in the common transactions of life.” This decision, doubtless, occasioned the subsequent legislation upon the subject in 1839, to-which we have referred. Whether such a rule thus adopted and published by the Supreme Court, could be controlled by subsequent, local custom, may well be doubled. Frith v. Baker, 2 Johns. 327; Hone v. Mutual Safety Ins. Co., 1 Sandf. Sup. C. 137.
But without determining this question, it is sufficient in this case-to say that where, in the absence of any statutory provision on the-subject, a rule of commercial law has been adopted by a court of last resort in a state, the usage will thenceforward be presumed to-conform to such rule throughout the state; and this presumption,, if not conclusive, can only be rebutted by clear proof of a uniform and settled local usage to the contrary.
In the case before us, the only evidence adduced upon the trial in the district court to show a usage in Cincinnati conflicting with the rule adopted in 7 Ohio, was the testimony of Mr. Avery.
It appears from his testimony that his business as a notary had been principally to protest mercantile paper for banks, and that in regard to notes not payable in banks, the usage, after the publication of the decision of the Supreme Court in the case of Sharp v. Ward, was not uniform at Cincinnati. That though he had uniformly protested negotiable paper on the third day of grace, prior to that decision, yet that after its publication some *persons directed him to protest notes not payable in banks, both on the days-of their maturity without grace, and on the third day of grace. *290 The testimony of Mr. Worthington related entirely to the custom at Cincinnati prior to the decision of the Supreme Court.
There being, then, no conflict of testimony before the court, the question presented for its consideration was rather one of law arising upon an uncontroverted state of facts, than a question of fact.
The district court held that under the state of facts shown by the proof, the demand of payment had not been made on the proper day, but should have been made on the third day of grace.
We think that the recollection of the witness appearing to be imperfect, and the local usage relied on by the defendant having been shown not to be uniform, the rule adopted in Sharp v. Ward should have been followed, and that the plaintiff should have had judgment. The judgment of the district court must therefore be reversed.
Bartley, C. J., and Swan, Brinkerhoee, and Sutliee, JJ., concurred.