ABIAL LIBBY & others *vs.* CHARLES P. GAGE & others.
CHARLES P. GAGE & others *vs.* ABIAL LIBBY & others.

Ice was shipped at Maine for Mobile, under a bill of lading which provided that the hold of the vessel should not be opened or exposed to the air unless by stress of weather or wants of the vessel, in which case due protest should be made, and an account kept of all ice thrown overboard in case of jettison; and that the ice should be delivered in like good order and condition, with all due diligence, excepting what might be lost by the natural waste of the article, at Mobile, the dangers of the seas only excepted, to the consignees or their assigns, they paying freight for the same at seven dollars and fifty cents per ton. The ice was stowed in the hold and around the mast. While prosecuting the voyage, the vessel suffered damage which made it necessary to put into port for repairs, where it became necessary to take out the old mast and put in a new one, and there was some melting of the ice in consequence, as well as from the delay. *Held*, that the owners of the vessel might recover for the freight, ascertained thus: Determine how much ice was on board when the hold was opened for repairs, and how much was melted in consequence of such opening; and as the former amount is to the latter, so is the whole number of tons shipped at the outset to the number of tons to be deducted therefrom; and on the residue, after making such deduction, freight is payable at the stipulated rate per ton. *Held*, also, that the owners of the ice were entitled to general average upon the vessel, for the ice lost in consequence of taking out the old mast and fitting in the new one, but not for that lost by its natural waste during the detention.

THE *first* of these actions was an action of contract brought by the owners of the brig Cascatelle against Charles P. Gage & Co., to recover the freight on a cargo of ice, shipped by the defendants at Richmond, Maine, for Mobile, Alabama, on board the plaintiffs' vessel, under a bill of lading, acknowledging the receipt of "four hundred and six tons of ice; it being understood and agreed as follows: That as ice is a perishable article, the hold of the vessel where it is placed shall not be opened or exposed to the air, unless by stress of weather or wants of the vessel; in which case due protest shall be made, and an account kept of all ice thrown overboard in case of jettison; that the vessel shall be kept regularly pumped out during the passage ; that no fish, meat or other articles shall be placed in or with the ice without the consent of the shipper. Which is to be delivered in like good order and condition, with all due diligence (excepting what may be lost by the natural waste of the article) at the aforesaid port of Mobile, Alabama, (the dangers of the sea only excepted,) unto Messrs. Charles P. Gage & Co., or to their assigns, he or they paying freight for the said ice at seven dollars fifty cents per ton with average accustomed."

The ice was a full cargo, and was stowed by the shippers in the hold and around the mast. The brig sailed from Richmond May 8, 1866, and while prosecuting her voyage lost her foremast and suffered other damage, which made it necessary for her to put into New York for repairs, which she did May 28. In making the repairs, it became necessary to take out the old mast and put in a new one, and there was some melting and loss of ice occasioned by admitting the air into the hole where the mast was taken out, as also by the delay occasioned by putting into New York for repairs. The vessel sailed from New York June 12, and arrived at Mobile July 14.

In an ordinary voyage from Richmond to Mobile, a cargo of ice would not usually waste more than twenty-five per cent.; in this case, there was only about fifty per cent. of the ice delivered. The custom in regard to ice freights on ordinary voyages is to pay freight on the amount of ice put on board, although the whole amount put on board is never delivered, as ice is always wasted somewhat on a voyage.

The parties submitted the case above stated to the decision of the court, and agreed that if the plaintiffs were entitled to recover the whole amount of the freight money as by the bill of lading, judgment should be rendered for them accordingly; if not, the action should be referred to an assessor to determine the amount due under the direction of the court.

*H. C. Hutchins,* for the plaintiffs.

*J. C. Dodge,* for the defendants.

GRAY, J.   This action is brought by the owners of a ship against the shippers and consignees of the cargo to recover freight according to the terms of the bill of lading. The question whether any deduction is to be made from the plaintiffs' claim is to be determined by the application of well settled principles of law to the peculiar facts of the case.

The general rule is that the ship-owner, in order to earn his freight, must perform his contract by carrying the goods to and delivering them at the port of destination, unless such performance is prevented or waived by the act of the consignee, or unless the goods perish by an intrinsic principle of decay naturally inherent in the commodity itself, the risk of which, whether active in every situation, or only in the confinement and closeness of a ship, rests upon the owner of the goods.   Abbott on Shipping, (7th ed.) 406, 428.   3 Kent Com. (6th ed.) 219, 228.   *The Nathaniel Hooper,* 3 Sumner, 554.   *Clark* v. *Barnwell,* 12 How. 282.   Perils of the sea are ordinarily excepted, as they are in this bill of lading.   The carrier, not insuring the goods either against perils of the sea or against their own decay or evaporation, is entitled to his freight upon delivering them at the port of destination, however much diminished in bulk or value, either by perils of the sea, or by intrinsic defect, without his fault.   3 Kent Com. 225.   *M'Gaw* v. *Ocean Ins. Co.* 23 Pick. 412, 413. *Lord* v. *Neptune Ins. Co.* 10 Gray, 114, 119.   *Steelman* ·:. *Taylor,* 19 Law Reporter, 36.   *The Norway,* 3 Moore P. C. (N. S.) 245.   But although he does not assume the risk of perils of the sea, yet if the goods are wholly lost by such perils, or by jettison to avoid them, he does not earn the freight, because he does not deliver the goods at the port of destination.   And a loss by the

fault of the carrier or his servants of any part of goods shipped under an entire contract of affreightment will defeat his right to recover any freight. *Sayward* v. *Stevens,* 3 Gray, 97. The substance and effect of these principles may be stated thus: Neither party insures the other against perils of the sea; the shipper takes the risk of intrinsic decay of the goods; and the carrier is responsible for his own negligence. Under one entire contract of affreightment therefore, if the goods are wholly lost by perils of the sea, or the whole or part of them is lost by the fault of the carrier, he can recover no freight; but if part only of the goods is lost by perils of the sea, or a part or even the whole perishes by intrinsic decay, he is entitled to full freight.

But treating the contract of affreightment as entire and indivisible often produces hardship and injustice; either by charging the owner of goods with full freight, when the greater part of the goods has been lost by perils of the sea, and but a small remnant is finally delivered; or by refusing to allow any freight to the owner of the ship, when only a small portion of the goods has been lost or omitted to be carried by his fault, and he safely carries the residue to the port of destination, but the consignee there refuses to receive it or to pay freight. The parties therefore, by the terms of the charter party or bill of lading, often modify the contract by providing that freight shall be paid by the cask, or package, or ton; and when the parties have thus made divisible what would otherwise be entire, so many casks, packages or tons as the ship-owner does not take and carry according to his contract, or as are lost by perils of the sea, may be deducted, and freight recovered for those remaining, and for those orly. 3 Kent Com. 227. Bigelow, J., in *Sayward* v *Stevens,* 3 Gray, 103. Thus in *Ritchie* v. *Atkinson,* 10 East, 295, the master of the ship agreed by charter party to take and carry from St. Petersburg to London a complete cargo of iron and hemp at certain rates per ton, and actually took and carried an incomplete cargo of those articles, and was held to be entitled to recover freight at the stipulated rates for the amount carried and delivered, leaving the shipper to his remedy by a cross action for the short delivery. And in *Frith* v. *Barker,* 2 Johns. 327,

**one** hundred and ninety hogsaeads of sugar were shipped at the rate of freight, as stated in the bill of lading, of seven dollars per hogshead; on the voyage the ship met with perils of the sea, by which all the sugar was washed out of fifty of the casks, and the remaining one hundred and forty casks of sugar arrived and were delivered; and it was held that freight could be recovered on the latter only.

The bill of lading of this ice fixes the rate of freight by the ton, and contains no other provision to modify the application of the general rules of law. The stipulation which recognizes the perishable nature of the article, and provides that " the hold of the vessel in which it is placed shall not be opened or exposed to the air, unless by stress of weather or wants of the vessel, in which case due protest shall be made, and an account kept of all ice thrown overboard in case of jettison," raises no implication that if the ice is so exposed, and thereby diminished in bulk, freight should be paid on the amount so lost. The exception of " natural waste " does not cover all waste or melting from whatever cause, but only the waste arising from the very nature of the ice itself; and merely affirms what the law would otherwise have implied. The custom to pay freight on the amount of ice put on board, without deduction for the necessary waste on the voyage, accords with the terms of the contract and with the general rules of law.

It is agreed that in this case the melting and loss of ice were occasioned in part by the delay resulting from putting into port in consequence of perils of the sea, and in part by admitting the air into the hole where the mast was taken out. The waste, decay or deterioration of goods in the hold of a vessel, though aggravated by protraction of the voyage in consequence of meeting with perils of the sea, is still, if those perils do not otherwise operate upon the goods, attributable to the nature of the goods, and not to the perils of the sea, as the proximate and efficient cause. *Baker* v. *Manuf. Ins. Co.* 12 Gray, 603. *Clark* v. *Barnwell*, 12 How. 282, 283. It is not pretended that the sea broke into the hold or in any way directly affected the ice so as to diminish its quantity. The delay in the port of repair, like a

retardation of the voyage by baffling winds, simply afforded more time for the ice to diminish, from its inherent liability to waste away ; and such diminution during such delay, as well as on the voyage before and afterwards, was natural waste, which was at the risk of the owner of the cargo, and did not affect the ship-owner's claim for freight.

But the diminution in bulk from necessary exposure to the air and climate, in order to repair injuries which the ship had suffered from perils of the sea, was directly attributable to such perils, as much as if a portion of the cargo had been washed out by the waves, or thrown overboard to enable the ship to ride safely in a storm. The exception of "natural waste" does not cover the destruction of ice by this extraordinary exposure for the purpose of making necessary repairs; just as it has been held by this court that insurers declared in the policy to be "not liable for ice melting in consequence of putting into port" were not thereby exempted from loss by the necessary unlading of the ice to examine and repair the vessel. *Tudor* v. *New England Ins. Co.* 12 Cush. 554. If indeed this contract of affreightment had been entire and the freight estimated at a gross sum for the whole cargo, this diminution also would not have reduced the amount of freight due after transportation of the residue to the port of destination and delivering it there. But the freight was payable by the ton, and the contract of affreightment thus made divisible ; and therefore on that portion of the cargo which was lost by opening the hold, and for that reason not carried to the port of destination, no freight is due.

As the waste on the voyage from the port of departure to the port of repair did not affect the claim for freight, the cargo is to be estimated at the latter port as if it had still been four hundred and six tons complete; then such proportion of that number of tons, as the amount of ice melted and lost by the opening of the hold for the purpose of necessary repairs of the ship bears to the quantity of ice on board when such repairs were begun, is to be deducted from the whole number of four hundred and six tons ; and on the residue, so computed, inasmuch as no further deduction is to be made for the waste of the ice on the

completion of the voyage, freight is payable at the stipulated rate of seven and a half dollars a ton. For the purpose of making this computation, and in accordance with the agree‑ ment of parties, this case is          *Referred to an assessor.*

THE *second* action was an action of contract for general aver‑ age against the owners of the brig Cascatelle by the shippers and consignees of the cargo of ice. This case was submitted to the judgment of the court upon the same statement of facts as the *first* case, and argued at the same time; and it was agreed that, if the plaintiffs were entitled to recover anything, it should be referred to an assessor to determine the amount under the direction of the court.

*J. C. Dodge,* for the plaintiffs.

*H. C. Hutchins,* for the defendants.

GRAY, J. In order to constitute a general average upon ship, cargo and freight, there must be a common peril impending over the whole, a voluntary sacrifice of part for the purpose of avoiding that peril, and thereby a common benefit to the resi‑ due ; and then in equity and justice, and by the express rule of the Rhodian law, preserved in the Pandects, from which the maritime law of all civilized nations on this subject is derived, all must contribute in compensating for the sacrifice by which the common peril has been escaped. According to all the authorities, any damage arising immediately from the act of sacrifice — as if in cutting away a mast, or throwing over part of the cargo, other parts of the cargo are injured — forms part of the general average ; for, as is well said in the Digest, What difference does it make to the owner, whether his goods are lost by jettison, or are injured by being laid bare ?  *Quid enim interest, jactatas res meas amiserim, an nudatas deteriores habere cœperim?*  Dig. 14, 2, 4. Molloy, bk. 2, *c.* 6, § 8. 2 Valin, 165, 167. Emerigon des Assur. *c.* 12, sect. 41, § 4. 3 Kent Com. (6th ed.) 235. 2 Dane Ab. 112. 2 Ar‑ nould on Ins. 890. And the fact that the goods injured are per‑ ishable in their nature does not exclude from the general average the immediate consequence of the act done for the common

benefit of all the interests at risk. Thus where the mainmast in being cut away, splintered, tearing off the piece of cloth, called the coat, nailed to the deck and mast for the purpose of keeping the water from running into the hold, and a large quantity of water rushed into the hold before the stump of the mast could be cut off and a new coat nailed over it; the cargo of corn, when afterwards unladen, proved to be so damaged as to be wholly unmerchantable; and the jury found that all the damage sustained by the cargo was occasioned by or in consequence of the cutting away of the mast, which was done for the preservation of the vessel, cargo and crew; the supreme court of New York held that the damage to the corn must be included in general average; and Mr. Justice Kent, in delivering the opinion, said, " The corn, being damaged by the cutting away of the mast, is to be considered, equally with the mast, a sacrifice for the common benefit; a price of safety to the rest; and it is founded on the clearest equity, that all the property and interest saved ought to contribute their due proportion to this sacrifice." *Maggrath* v. *Church*, 1 Caines, 196, 215.

If a vessel is injured by perils of the sea, and puts into a port of distress, extraordinary expenses there incurred, or property there sacrificed, for the sole purpose of enabling the ship to prosecute her voyage, deliver her cargo, and earn her freight, are voluntarily incurred for the common benefit, as much as a sacrifice of cargo by jettison, or a cutting away of the mast at sea to right the vessel; and upon the question whether the expenses in port are matter of general average, it is immaterial whether the loss or injury which obliged the ship to put into port was or was not of a like character. 2 Phil. Ins. § 1320. *Hall* v. *Janson.* 4 El. & Bl. 507, 508.

The sacrifice or expense must indeed be for the common benefit, in order to bring it within general average; and repairs on the ship, which are necessary to enable the owner to perform the contract of affreightment, and which enure to his benefit by increasing the permanent value of the vessel, are not a subject of contribution. *Padelford* v. *Boardman*, 4 Mass. 548. *Brooks* v *Oriental Ins. Co.* 7 Pick. 259. *Dyer* v. *Piscataqua Ins. Co.*

53 Maine, 118. 3 Kent Com. 235. Emerigon des Assur. *c.* 12, sect. 41, § 6. 2 Arnould on Ins. 906–909. But expenses of unloading, warehousing and reloading the cargo, if required for the purpose of making repairs on the ship, and not for the preservation of the cargo merely, are clearly matters of general average; for although the repairs actually made may be so peculiarly for the benefit of the ship as to be chargeable to the ship alone, the making of such repairs and the removal of the cargo for that purpose are necessary in order to enable the voyage to be completed, the cargo to be delivered, and the freight to be earned. *Bedford Commercial Ins. Co.* v. *Parker,* 2 Pick. 8. *Barker* v. *Phœnix Ins. Co.* 8 Johns. 307, 318. *Hall* v. *Janson,* 4 El. & Bl. 508. 2 Arnould on Ins. 905.

Injury to perishable goods by their own intrinsic decay during the detention at the port of repair is not a voluntary and extraordinary sacrifice for the common benefit of all the interests, is no more a subject of general average than the ordinary wear and deterioration of the ship would be, and falls within the maxim of *res perit domino.* 1 Valin, 669. 2 Valin, 164. Emerigon des Assur. *c.* 12, sect. 39, § 8. Stevens & Benecke, (Amer. ed.) 132. *Libby* v. *Gage, ante* 265, 266. *The Brig Mary,* 1 Sprague's Decis. 17. *Bond* v. *The Superb,* 1 Wallace, Jr., 355.

The only claim made by the plaintiffs in this action is for a contribution in general average for the ice lost by opening the hold to put in a foremast at the port of repair. The defendants rely upon the two cases last above cited as conclusive authorities against this claim. But upon examination it is clear that neither of them can be so regarded. In each of them, perishable goods which had already begun to decay were removed from the ship, and there was no evidence that the removal caused any injury to the goods. In *The Brig Mary,* the mast had been cut away, and it was alleged, but not proved, that salt water was thereby let in, which injured the cargo; the cargo was afterwards landed and stored, not merely in order to repair the ship, but because the cargo itself was so much damaged that it could not have remained on board, and after its landing was destroyed by fire; and Judge Sprague said that if the cargo had

been landed and stored in order to repair the ship, then this new risk would have been incurred for the general benefit, and the amount of the loss should have been allowed in general average and decided against the claim upon the following grounds: " The cargo was so damaged as to render its removal from the vessel indispensable. The owner had no option. I cannot therefore consider him as having made a voluntary sacrifice for the purpose of prosecuting the voyage. The goods consumed by fire are not therefore to be brought into general average." In the case of *The Superb,* Mr. Justice Grier affirmed the general principle that "where the direct and immediate cause of the damage to perishable articles is some act done for the general preservation, the owner would have the same right to claim for general average, as if the goods had not been in their nature perishable;" and referred with approval to *Maggrath* v. *Church,* above cited; and as it is stated in the report that the court "thought the evidence insufficient to sustain the claim under any assumption of the law," the discussion in the opinion as to the rule of law applicable to a view of the facts which was not supported by proof can hardly have the weight of an adjudication.

The bill of lading in this case recognizes the perishable nature of the cargo, and the duty of the ship-owner not to open the hold except in case of necessity, and then to keep an account of any ice jettisoned. If it had affirmed a right of general average in case of jettison, it might possibly, according to the *dictum* of Lawrence, J., in *Jackson* v. *Charnock,* 8 T. R. 514, have excluded that right in all other cases. But it contains no such qualified affirmance, and leaves the general average to be made up by the ordinary rules of law.

It is agreed as a matter of fact that it was necessary to take out the old mast and put in a new one, and that there was some melting and loss of ice, by admitting the air into the hole where the mast was taken out, and also by the delay occasioned by putting in for repairs. For the loss occasioned by the natural waste of the article during the delay, the ship-owner, by the general rule of law, as well as by the terms of the bill of lading,

# JANUARY TERM 1867. 271

Proprietors of Long Wharf & others *v.* Central Wharf Corporation & others.

was not accountable, and is not sought to be charged; but for that waste which was directly caused by opening the hold to make necessary repairs, it is equally clear, upon the principles and authorities already stated, that he was bound to contribute. It would be contrary to the principles of justice and the well settled law of general average, to oblige the owner of the cargo to bear a loss directly caused by an act which was at least as much for the benefit of the ship and freight as of the cargo. According to the agreement of the parties, the case must be referred to an assessor to ascertain the amount of the loss of ice from this cause. *Judgment for the plaintiffs.*